W. W. McCANLESS v. JAMES FLINCHUM, Sr., and JACOB
FLINCHUM.

*Constitution—Homestead—Appeal—Record and Case—Void
and Voidable Execution Sales—Demurrer—Trial by Jury—
Issues—New Trial.*

M, in 1870, recovered judgment against F upon a debt contracted in
1862, and caused several tracts of land, which he alleged belonged
to the debtor, but which the latter had fraudulently conveyed, to be
levied upon and sold *en masse*, and he became the purchaser. No
homestead was allotted. On the trial of an action to recover the
land, a jury having been empannelled, the *record proper* stated
" there was no response from the jury" but that "judgment was
rendered for the defendant upon demurrer to the evidence;" the
*case on appeal* stated that the Court instructed the jury that the
plaintiff could not recover and a verdict was rendered accordingly;
*Held*, (SMITH, C. J., dissenting).

1. That the statement contained in the record proper must prevail, and
as it appeared therefrom that the Judge had, in effect, assumed cer-
tain facts which were in issue and which should have been submitted
to the jury—trial by jury not having been waived—a new trial must
be granted.

2. (DAVIS, J., dissenting). That a sale of land under execution upon a
judgment founded upon a debt contracted prior to the adoption of
the constitution of 1868, without first allotting the debtor's home-
stead, unless it distinctly appears there can be no excess, is void and
the purchaser will acquire no title.

3. The distinction between the demurrer to the complaint and a de-
murrer to the evidence discussed by SMITH, C. J.

4. Void and voidable execution sales discussed and the authorities re-
viewed by SMITH, C. J., and DAVIS, J.

5. The practice with respect to the allotment of homestead under pro-
cess to enforce judgments founded upon " old debts" discussed by
MERRIMON, J.

(*Farmer* v. *Willard*, 75 N. C., 401; *Morrison* v. *Watson*, 95 N. C., 479;
*Mitchell* v. *Brown*, 88 N. C., 156; *Turrentine* v. *Railroad*, 92 N. C.,
638; *State* v. *Locke*, 77 N. C., 481; *State* v. *Sykes*, 79 N. C., 618; *Isler*
v. *Murphy*, 71 N. C., 436; *Burnheim* v. *Waring*, 79 N. C., 56; *Jones*

v. *Call*, 93 N. C., 170; *Brown* v. *Kinsey*, 81 N. C., 245; *Jones* v. *Lewis*, 8 Ired., 70; *Anderson* v. *Pritchett*, 72 N. C., 135; *Hollowell* v. *Skinner*, 4 Ired., 165; *Nixon* v. *Harrell*, 5 Jones, 76; *Bank* v. *Graham*, 82 N. C., 489; *Beckwith* v. *Mining Co.*, 87 N. C., 155; *Huggins* v. *Kitchum*, 4 D. & B., 414; *Wilson* v. *Twitty*, 3 Hawks, 44; *Thompson* v. *Hodges*, Ibid., 51; *Durham* v. *Bostwick*, 72 N. C., 353; *Arnold* v. *Estes*, 92 N. C., 162; *Mebane* v. *Layton*, 89 N. C., 396; *Miller* v. *Miller*, 89 N. C., 402; *Albright* v. *Albright*, 88 N. C., 238; *Gaster* v. *Hardie*, 75 N. C., 462; *Spoon* v. *Reid*, 78 N. C., 245; *Bank* v. *Green*, Ibid., 247; *Gheen* v. *Summey*, 80 N. C., 187; *Earle* v. *Hardie*, Ibid., 177; *Richardson* v. *Wicker*, Ibid., 172; *Crummen* v. *Bennett*, 68 N. C., 494; *Currie* v. *Clark*, 90 N. C., 355; *Burton* v. *Spiers*, 92 N. C., 503; *Hinton* v. *Roach*, 95 N. C., 106; *State* v. *Rives*, 5 Ired., 297; *Wilson* v. *Patton*, 87 N. C., 318; *Dortch* v. *Benton*, (at present Term); *Cheatham* v. *Jones*, 68 N. C., 153; cited and commented upon).

CIVIL ACTION tried before *Gilmer, Judge*, at August Term, 1887, of STOKES Superior Court.

The complaint alleges that the plaintiff is the owner in fee and entitled to the possession of the land decribed therein, and that the defendants unlawfully withheld the possession from him.

The answer denies 'the allegations of the complaint, and asserts that the defendants are "in truth and fact owners in fee simple of said land."

The record sets out that "at August Term, 1887, the case came on for hearing before his Honor, Judge GILMER, and a jury upon the following issues:

"1st. Is the plaintiff the owner and entitled to the lands sued for?

Answer.   *   *   *   *   *

2d. What damage, if any, is the plaintiff entitled to receive for the wrongful detention thereof?

Answer.   *   *   *   *   *

There being no response from the jury, judgment upon demurrer to the evidence for defendants; appeal by plain-

tiff to the Supreme Court in open Court. Undertaking on appeal fixed at $50."

The parties disagreeing, the case on appeal settled by the Court is as follows:

"The plaintiff claimed the land in controversy under a deed, executed to him by the sheriff of Stokes county, on the 6th day of February, 1871, conveying to him four separate tracts of land in Stokes county, one tract on the north side of Dan river and three on the south side, not contiguous, one tract containing 50 acres, being the land in controversy in this action. A judgment in favor of the plaintiff and against the defendant, James Flinchum, for $205.09, and docketed in Stokes county October 6th, 1870, together with the summons and sheriff's return duly served, and justice's judgment, was put in evidence ; and it was admitted that the debt on which the judgment was rendered, bore date March 10th, 1862; also execution duly issued to satisfy said judgment with the return of the sheriff showing a levy upon all four of the tracts of land belonging to defendant, James Flinchum, and a sale on the 6th February, 1871, and purchased by plaintiff at the price of $200.00 for all of the tracts.

" W. H. Gentry, a witness for plaintiff, testified that he put up and sold all four of the tracts together, when plaintiff bought them, and that he was acting under the direction of plaintiff.

"Plaintiff offered in evidence a deed from James Flinchum to defendant, Jacob Flinchum, a son, for 50 acres, (the land in controversy) at the stated price of $70.00, a deed from James Flinchum, Sr., to James Flinchum, Jr., a son, for a 70 acre tract, at $110.00, and from James Flinchum to James Rierson (a son-in-law) another tract, 70 acres, at $70.00, and to Pleasant Tilley (another son-in-law) 125 acres, at $170.00; the four tracts included in the sheriff's deed to plaintiff, and all bearing date March 1st, 1870, and embracing 315 acres.

" It was proven by plaintiff, that the land bought by him

was worth at the time of the sale by the sheriff $5.00 per acre, or $1,575.00.

"The land was sold without allotting to the defendant, James Flinchum, his homestead.

" The plaintiff contended that the deeds from James Flinchum, the father, to his respective sons and sons-in-law, were made to defraud his creditors and were void, and introduced much testimony tending to show such fraudulent intent.

" The defendant introduced no testimony, but insisted before the Court, as upon demurrer to the testimony, that upon the plaintiff's own showing there was a sufficiency of land belonging to defendant Jas. Flinchum, at the time of the sale, in excess of a homestead, of the value of $1,000.00, to satisfy the plaintiff's debt, and that the sale by the sheriff in bulk, and his deed to plaintiff, was contrary to law and void, and passed no title to purchaser. This was the only contention before the Court and jury. His Honor being of opinion with defendants, instructed the jury that the plaintiff's deed was void and conveyed no title to plaintiff, and that he could not recover, and plaintiff excepted.

" There was a verdict for the defendants. Motion by plaintiff for a new trial on the ground of error in instructions above specified. Motion overruled. Judgment against plaintiff for costs. Appeal by plaintiff to Supreme Court, in open Court."

*Mr. Jas. T. Morehead,* for plaintiff.
*Messrs. C. B. Watson* and *W. B. Glenn,* for defendant

Davis, J. The record proper states that certain issues were submitted to the jury, and that "there being no response from the jury, judgment upon demurrer to the evidence for the defendant, and appeal by plaintiff."

This, though in conflict with the statement of the case on

appeal, must be taken as true. The statement of the case is no part of the record proper, and when in conflict with it the latter must prevail, because it imports absolute verity. *Farmer* v. *Willard,* 75 N. C., 401.

We must take it then, as appears from the record, that there was *no verdict* upon the issues.

*The Code,* §957, makes it the duty of the Supreme Court to render such judgment, "as on inspection of the whole record it shall appear to them ought in law to be rendered thereon, or, as now the Act of 1887 directs, and when the judgment is not supported by the record (in this case the record shows that there was *no verdict*), or is rendered upon an inconsistent or unsatisfactory verdict, a new trial must be awarded, as was done in *Morrison* v. *Watson,* 95 N. C., 479; *Mitchell* v. *Brown,* 88 N. C., 156, and *Turrentine* v. *Railroad,* 92 N. C., 638.

If it be said that in this case, the judgment of the Court was based upon facts *proved,* and that they were just such as the jury ought to have found upon the evidence as applied to the issues submitted, and it is "sticking in the bark" to say that judgment shall not be rendered because the *facts proved* were not found by the jury, the answer is, that under our Constitution, Art. 4, §13, unless a jury trial be waived, the Judge has no right to find the issue of fact joined, however clear the proof may be; it is an invasion of the exclusive and true office and province of the jury. It is his duty to "state, in a plain and correct manner, the evidence given in the case, and declare and explain the law arising thereon," but he can give no opinion even whether a fact is fully or sufficiently proven. *The Code,* §413; *State* v. *Locke,* 77 N. C., 481; *State* v. *Sykes,* 79 N. C., 618.

Proof is the result or conclusion usually reached by evidence. If there was evidence upon the issues, the jury alone could determine and weigh its effect, and find the *fact* to be deduced from it; if there is no evidence, or if it is

alleged to be insufficient and so held, the Court may with-hold it from the jury, but the Court cannot say upon the evidence what is or is not proven. This, unless by consent, is for the jury alone. If an *issue of fact* arises, even upon a motion in a cause affecting materially the judgment and rights of the parties, either party has a right to have it decided by a jury. *Isler* v. *Murphy*, 71 N. C., 436.

When the Court instructs the jury that there is no evidence, or insufficient evidence, the party excepting has a right to have the evidence set out in the record, so as to enable this Court to review the ruling in the Court below.

The case before us states that: "It was proven by plaintiff that the land sold by the sheriff as aforesaid and bought by him, was worth at the time of the sale by the sheriff $5.00 per acre, or $1,575.00." This may or may not be the effect of the plaintiff's testimony—it may or may not have been the conclusion which the jury would have deduced from it, but what that testimony was, does not appear in the record, but it does appear that there was other evidence tending to show that the land was worth much less. It appears that it was sold at public auction—it is not alleged that there was any fraud or collusion on the part of the plaintiff or sheriff by which its value was affected, and if such allegation had been made, the plaintiff would have had a right to have had it passed upon by the jury.

The land was worth what a prudent, discreet person, wishing to buy and able to buy, would give for it, and the only act of the *sheriff* or of the *plaintiff* in conducting the sale, of which the defendants complain, which could affect the price, is that it was sold *en masse;* this fact, if it had been found by the jury, does not exclude from the consideration of the jury, as evidence of the value of the land, the price at which it sold at public auction, nor the fact which appeared, that the plaintiff himself had sold the land a short time before at much less than $1,000. What effect the alleged fraudulent

acts of the defendants, of which, so the case states, there
"was much testimony," may have had upon the price, or
how and to what extent they may have affected the value of
the land by beclouding the title, does not appear, and
whether, in this respect, the defendants could take advantage
of their own alleged fraudulent acts or not, there was evi-
dence tending to show that the land was worth less than
$1,000; and the plaintiff had a right to have it passed upon
by the jury. This was his constitutional right. *Bernheim* v.
*Waring*, 79 N. C., 56; *Jones* v. *Call*, 93 N. C., 170; *Brown* v.
*Kinsey*, 81 N. C., 245.

The defendants say the sale was made by the sheriff in
bulk, and they insist that his deed to the plaintiff was void
for that reason. It is undoubtedly the duty of the sheriff to
sell in such way as to realize, so far as he may be able to do
so, a fair price for the property sold under execution, and if
he fails to do so, the sale is voidable, and, upon objection,
may be set aside; but this is a question of fact which ought
to be submitted to a jury. *Jones* v. *Lewis*, 8 Ired., 70.

It is said in *Andrews* v. *Pritchett*, 72 N. C., 135, that if a
sale is not made by the sheriff in a fair and just manner it
is voidable. Voidable by whom? The general answer is,
voidable by any person injured thereby—by the defendant
in the execution—by any creditor of the execution debtor.
But it is equally clear, that no matter how irregular *soever*
the sale may have been, no one could complain of it who
was assenting to it. Only a person injured can complain,
and as against him it is voidable, not void. It is valid
against every one except the party *injured*, and he must
show how he was injured, in order to avoid the sale—if
made with his own assent, or if the insufficient price was
caused by his own neglect or fraud, as to him it was *damnum
absque injuria*. *Andrews* v. *Pritchett, supra; Hollowell* v. *Skin-
ner*, 4 Ired., 165.

For an improper discharge of his duty in selling property

under execution, the party injured has his remedy against the sheriff, and, as we have seen, the sale may be set aside, but it does not make the sale void. *Nixon* v. *Harrell,* 5 Jones, 76. In the absence of fraud (and none is alleged against the plaintiff) the sale will not be set aside. *Bank* v. *Graham,* 82 N. C., 489.

A sale will not be set aside for inadequate price, unless undue advantage or fraud is suggested, and this is a fact to be found. *Beckwith* v. *Mining Co.,* 87 N. C., 155. A sale *en masse* is not void, but will be supported where no fraud is shown either in the sheriff or purchaser. *Huggins* v. *Ketchum,* 4 Dev. & Bat., 414; *Wilson* v. *Twitty,* 3 Hawks, 44; *Thompson* v. *Hodges,* 3 Hawks, 51.

In *Durham* v. *Bostwick & Martin,* 72 N. C., 353, the plaintiff claimed under a sheriff's deed; the defendants alleged that the land was exempt from sale under execution as a homestead, and that the sale by the sheriff was void. It was found by the jury that the deed from Bostwick was made to defraud creditors; that Martin, who became the purchaser, had notice of the fraud when he purchased, and that the consideration of the note sued on was for a *balance* due on the purchase of the land. No homestead was laid off by the sheriff. Upon the verdict of the jury, judgment was given for the plaintiffs, and it was held good.

The case before us, as alleged by the plaintiff, is almost an exact parallel.

It is alleged that the defendant James Flinchum, Sr., sold to his co-defendant, Jacob Flinchum, to defraud creditors— that Jacob Flinchum, the purchaser, was a party to the fraud, and that the consideration of the judgment upon which the execution issued, under which the land was sold and purchased by the plaintiff, was an old debt. If the jury should find these facts as alleged, (and the plaintiff had a right to have them passed upon by the jury,) it is difficult to perceive way, upon the authority of the last cited case,

the first issue presented in the record should not be found in favor of the plaintiff.

It was upon that issue that the defendants insisted that the sale under which the plaintiff claimed was void, because the land was sold in bulk and without laying off the homestead. The execution under which the plaintiff purchased was issued on an old debt, against which no homestead exemption interposed. As settled by this Court, though the deed from James Flinchum, Sr., to Jacob Flinchum, may have been fraudulent and void as against an old debt, yet he was entitled to a homestead in any excess to the extent of $1,000.

In *Morrison* v. *Watson*, 95 N. C., 479, there was no question of fraud affecting the rights of the parties to the land. The execution was upon an old debt. There was a verdict upon issues submitted, and the judgment, after reciting that the judgment was for a debt contracted prior to 1868, concludes thus: "And it appearing from the verdict and the said *admitted* fact, that the land was of sufficient value to constitute the defendant a homestead, as well as to satisfy said execution, it is ordered and adjudged by the Court that the plaintiff take nothing," &c.

It appeared from the case that one of the findings of the jury was in conflict with one of the *admitted* facts, and this Court granted a new trial. The Court could not render in such a case a judgment *non obstante veredicto.*

It would be singular if the Court could not render a judgment upon an *admitted* fact that was in conflict with the fact found by the jury, and yet should have the power to take the question of fact entirely from the jury and assume that any fact was proven.

In *Arnold* v. *Estes*, 92 N. C., 162, the execution under which the sheriff sold, was upon a judgment rendered on an account, a part of which had been contracted prior to the adoption of the present Constitution and a part after. It was held to

be the duty of the sheriff to lay off the homestead before sale, to the end that the debtor might get the benefit of his exemption against "subsequent and subordinate liabilities incurred." The Chief Justice, quoting *Mebane* v. *Layton*, 89 N. C., 396, said, "it is in emphatic terms, declared that a sale without laying off the homestead, unless in case of the several exceptions mentioned, is unlawful and void." The exceptions are : (1) for taxes, (2) for payment of money due on the purchase of the property, (3) laborer's lien, and (4) debts contracted prior to the adoption of the present constitution, and as to these, it may be declared in equally emphatic terms, that the sale is not void, simply because of a failure of the sheriff to lay off the homestead.

Not only was this so in *Miller* v. *Miller*, 89 N. C., 402, immediately following *Mebane* v. *Layton*, but it is said, "where the homestead prevails, the creditor gets what is over and above the exemption, and the law requires it to be laid off, to the end that what remains may be sold, and the sheriff cannot sell without first laying off," &c., and the execution creditor cannot require the sheriff to sell without first paying or tendering his fees and having the homestead allotted; "but where the homestead does not prevail, the debtor takes what is left, after the debt is paid," and in the latter case, the sheriff has no right to require execution creditors to pay the fees for laying off the homestead, and the execution debtor cannot require it without paying the fees. In such cases, the application must come from the debtor.

In *Albright* v. *Albright*, 88 N. C., 238, there were judgments against the plaintiff on both old and new debts. As against the new debts, he was entitled to his homestead ; as against the old, he was not, and he asked the intercession of the Court, to have his property sold to the best advantage, so as, if possible, to secure a homestead for himself in the excess above the old debts, and this was upon his application, and

the Court directed the sale to be suspended until the priorities of the rights of parties could be adjusted, so that the land could be so sold as to command a fair price, after all conflicting incumbrances were settled, and all clouds removed from the title. It was held that he was entitled to this relief, and similar relief was afforded upon the application of the debtor in *Gaster* v. *Hardie*, 75 N. C., 462.

In *Spoon* v. *Reid*, 78 N. C., 245, it was said: "The sheriff is not obliged to lay off to the defendant the house in which he lives, if it is not his property. * * * * * * All of a man's property was and is held subject to the payment of his debts, except in so far, and to the extent only, that it has been specifically exempted."

As against debts contracted prior to 1868, there is no homestead exemption. If the debtor has more property than will pay such debts, he is entitled to his homestead in the excess, but it is no part of the duty of the creditor holding such debt, nor of the sheriff with an execution in his hands, issued upon a judgment on such a debt, to investigate and find out without the aid of the debtor, who makes no claim to a homestead, who professes to have no interest in the property, whether there is an excess or not. *Bank* v. *Green*, 78 N. C., 247.

Upon the payment of his fees, it is the duty of the sheriff to lay off the homestead, but this applies, and can only apply, to cases in which the party is *entitled*, as against the execution creditor, to the homestead, and it will be found that in all cases where the sales have been held void by reason of his failure, it was either where the homestead was valid against the execution debtor, or if in the excess, after satisfying a debt of the excepted classes, when he refused to do so when requested by the execution debtor or some one succeeding to his rights.

In *Edwards* v. *Kearsey*, 6 Otto., 595, the Supreme Court of the United States, reversing the judgment of this Court,

said: "The claim for the retrospective efficacy of the Constitution, or the laws cannot be supported," and the Constitution of 1868, as expounded by this Court, "and the laws passed to carry out its provisions," impaired the obligation of the contracts in question—that is, contracts made anterior to the adoption of the Constitution.

At an early day, after the decision in *Edwards* v. *Kearney*, this Court in *Gheen* v. *Summey*, 80 N. C., 187, said the Act of 1869, Battle's Revisal, chap. 55, (*The Code*, § 510 to 524), "so far as it provides the machinery for laying off and allotting the homestead against debts contracted prior to the adoption of the Constitution of 1868, is void," * * * * "and there is no obstacle to the levy and sale under their executions," &c. "The second section of Art. 10 of our Constitution of 1868 having been declared void as against debts previously contracted, the Act of the Legislature passed (Bat. Rev., chap. 55), to carry its provisions into effect, is also void as against the same debts." *Earle* v. *Hardie*, 80 N. C., 177.

In *Richardson* v. *Wicker*, 80. N. C., 172, which was a motion to amerce the sheriff for failure to have in the Court the amount of an execution issued upon a judgment on a debt contracted prior to 1868, this Court said: "The imposition of a penalty for a want of official diligence is a matter of State regulation, and it would be no impairment of the plaintiff's right to collect his debt if the Legislature should repeal the amercement law altogether;" but it was not only said in that case that the sheriff had substantially the right under executions on old debts to sell the real and personal property of the debtor without any exemption whatever, except the personal property exempt under legislation in existence at the time of the contract, but that his failure to sell would give to the plaintiff in such execution "a right by action on the case against the sheriff alone, or by a suit on his official bond, to recover such damages as he could prove he had sus-

tained;" "and there is" says the Court, "no doubt he could have maintained such action."

It was the duty of the sheriff to sell without laying off the homestead, and his return that the "plaintiff neither pays nor tenders fees to lay off same, (the homestead) and therefore no action" would not protect him.

*Crummen* v. *Bennett,* and all that class of cases were with *Edwards* v. *Kearney,* overruled by the Supreme Court of the United States in the last named case, and since that decision I have not been able to find a case in conflict with *Gheen* v. *Summey, Earle* v. *Hardie* and *Richardson* v. *Wicker, supra,* and *Crummen* v. *Bennett* and the like cases are, I think, no more authority by which we can be guided than *Edwards* v. *Kearney.*

They have been overruled, and cease to be authority.

In perfect harmony with the decision of the Supreme Court of the United States in *Edwards* v. *Kearney,* as against creditors holding debts contracted since the adoption of the Constitution, a sale under execution, without laying off the homestead. is void, and as against such debts no sale of the homestead by the debtor is fraudulent and void, because, as to such debts there are no rights against the homestead; yet a sale made by a debtor with intent to defraud a creditor holding a debt against which the homestead does not avail, is *fraudulent* and *void* as against such creditor, and it can be no part of the duty of such creditor or of the sheriff to investigate and lift the acts of the fraudulent execution debtor and his fraudulent vendee, and find just at what point the fraud ends, and the saving and purifying efficacy of the homestead begins, and, I think, with still less reason can the Courts be called on to aid them, when the alleged fraudulent vendee is claiming under the deed of the vendor, paramount to, and in denial of, the creditor's right altogether.

This Court has held that a deed, though made by a debtor to defraud his creditors, and valid as between the parties,

and void as to creditors, does not defeat the fraudulent vendor's right to his homestead, "for" says PEARSON, C. J., "the creditor could not have reached that by his execution had the debtor retained his homestead, but his fraud was in conveying the other part of the land. That the creditor can reach by his execution. As to the homestead he has no concern; that matter will rest between the fraudulent donor and donee." *Crummen* v. *Bennett*, 68 N. C., 494.

It rests, briefly, upon the proposition that, as the creditor has no right to have his debt paid by a sale of the homestead under execution, therefore the *fraudulent* sale of the homestead is, as to him, no fraud.

This reasoning cannot apply to creditors within the four excepted classes. Adhering to the rule of *Stare decisis*, and without questioning the soundness of the reasoning upon which the decision rests, it cannot apply to debts of the excepted class, because as against them the sale is *fraudulent* and *void*. To hold differently, and permit the fraudulent vendor and vendee—after having, by a sale, fraudulent and void, as against the plaintiff's debt, sought to defraud him of payment, and, without having asserted any claim to the homestead, and after having by their own fraudulent acts and claim of title and denial of plaintiff's right to have his debt satisfied by a sale of the land in dispute, thrown such a cloud upon the title as to effect its value and make it unsafe for any prudent person to buy it at a full and fair price (for only the interest of the execution debtor is sold under execution, there is no warranty of title, and the fraudulent vendee, who alone verifies the answer, is, in this very action, claiming the land), to permit acts under such circumstances to come into Court and ask immunity and protection from the consequences of their own fraudulent acts, claiming all the benefits without any offer to pay or secure the debt which it was their fraudulent purpose to defeat, would be to invest the homestead with a purity and sanctity which

cannot be stained by fraud; it would, in fact, make it one place where fraud can safely dwell, and though detected and exposed, be still protected and secure, naked and unblushing in the very face of the Court. If such can be the law, honesty and justice might well blush for shame, and dishonesty and fraud glory in their triumph. It may be that in this case, if the land was sold under such circumstances as prevented a fair price, upon a proper application, as was done in *Currie* v. *Clarke*, 90 N. C., 355, and suggested in *Andrews* v. *Pritchett*, 72 N. C., 135, the sale may be set aside, "restoring the parties to the *status* they occupied previously thereto, and without prejudice to the plaintiff's remedies, from the lapse of time." There is no error.

MERRIMON, J., (concurring in the judgment granting a new trial). I concur with my brother DAVIS, in the conclusion that there must be a new trial, but I cannot concur in what he says in respect to the right of the execution debtor to have homestead.

In my judgment the Court ought to have instructed the jury to inquire particularly whether or not the land in question was worth more than the debt of the execution creditor, and the costs, including the costs of laying off the homestead of the execution debtor, and if they found that it was, then the plaintiff could not recover, because it appeared that the homestead had not been laid off as the law required, and in that case, the sheriff had no sufficient authority to sell the land, and therefore his deed to the plaintiff was void.

It has been oftentimes said, and it is settled by express decision, that the law favors the homestead—will give and help to give it, when the debtor can have it, and this is so although the debt is of the classes of debts as to which the right of the homestead does not prevail, if the debt can be paid without the sale of it. Hence, it was said in *Miller* v. *Miller*, 89 N. C., 402, that, " if the debt that may, if need be,

prevail against it, can be paid without selling it, this must be done.   The classes of debts that prevail against the homestead do not so prevail necessarily and at all events, but they do so only when it is necessary to pay them."

It is true that the debt must be paid, at all events, if the property is sufficient for that purpose, but the debtor must have the homestead, if the debt can be paid without selling it, and if the debtor cannot have the benefit of the full measure of it, he is entitled to have the same in such measure as the circumstances will allow.   *Wilson* v. *Patton,* 87 N. C., 318; *Albright* v. *Albright,* 88 N. C., 238; *Arnold* v. *Estes,* 92 N. C., 162; *Miller* v. *Miller, supra.*

If the debt is of the class that prevails against the homestead, because it was contracted anterior to the present Constitution, then, if need be, the creditor must as in other cases, pay the costs of laying off the homestead, but he will be entitled to be reimbursed in this respect out of the proceeds of the sale of the land, and this is so, because it has been held that such creditor is entitled to be reimbursed the costs of collecting his debt.

The fact that the execution debtor in this case may have sold the land to his sons and sons-in-law, in fraud of his creditors, does not deprive him of the right of homestead— he is entitled to have the homestead, notwithstanding, and as if there had been no fraud, as has been frequently decided. · *Crummen* v. *Bennett,* 68 N. C., 494; *Dortch* v. *Benton,* decided at this term, and cases there cited.   As to that, the sale was not fraudulent—the sale of it did not affect or abridge the rights of creditors—they had no right to or interest in, and they were not concerned to know what might become of it—any question in that respect was between the debtor and those to whom he undertook fraudulently to sell his land.

It is said, how can the homestead in such case be laid off with any degree of accuracy or certainty as to quantity

or value?    It is insisted that the appraisers cannot know how much of the land will be necessary or sufficient to be sold to pay the debt.    It must be conceded that there is more or less practical difficulty in the way, as suggested.    But this must be overcome as far as possible.    All that can be done, it seems to me, is to approximate as nearly as practicable the purpose of the law.    The appraisers, seeing the amount of the debt and costs to be paid and the land—its quantity and reasonable value—must lay off the homestead in such measure, less than one thousand dollars, as will probably leave land sufficient to pay the debt and costs, and the sheriff will proceed to sell the same.    If it turns out that the land so left to be sold is insufficient for the purpose, then he must sell the homestead so laid off, pay the balance of the debt, and any surplus to the execution debtor, or the person entitled to have it.    Thus will be done for the debtor all that the law contemplates.    The course of procedure thus indicated, though not satisfactory, seems to me, to be that implied and required by the law, in the absence of any express statutory provision on the subject.    *Cheatham* v. *Jones,* 68 N. C., 153;  *Wilson* v. *Patton, supra.*

I do not mean to intimate by what I have thus said, that in a proper case, the party entitled to homestead might not apply to the Court, in a proper proceeding for the purpose, to have the land sold as a whole, the debt paid from the proceeds of the sale, and the surplus paid to him, in ·lieu of homestead.    It seems to me that such a course would be practicable and expedient in many cases that may arise. *Wilson* v. *Patton, supra.*

What the value of the land sold and purchased by the plaintiff was, does not appear by the verdict of the jury as it should do, in terms or effect.    There was evidence on the trial, tending to prove that it was worth greatly more than the debt to be paid.    It was sold for less than that sum—why is left to conjecture.

The question was not tried and settled, certainly not satisfactorily, and I therefore concur in deciding that the plaintiff is entitled to a new trial. ·

SMITH, C. J., (dissenting from the judgment granting a new trial). I fully concur in the opinion of Mr. Justice MERRIMON, that without regard to the date of the debt the insolvent debtor is entitled to have his homestead ascertained and laid off, to the end that the excess be first applied to its payment, when sold under execution, so that the proceeds, if sufficient to discharge the demand, may exonerate the exempted part, or reduce its amount. The only difference between debts contracted before and after the adoption of the Constitution in 1868, is, that those of the former class, if the proceeds of sale of the excess be inadequate, must be satisfied out of the land set apart as the homestead, while those of the latter class cannot be. The laying off the exemption part is the plain duty of the officer in every case where it does not distinctly appear that there can be no excess in order that the fact may be determined in the manner and by the persons designated by law, as a guide to his further action under the execution. The validity of the sale is only supported when upon a trial of the title to the land it is manifest that the whole was required to meet the claim, and no detriment has come to the debtor by reason of the sale of the entirety. This view of the law is fully sustained by the authorities, and in the reasoning contained in the opinion, and meets my approval, while in another aspect of the case, I think the judgment ought to be affirmed.

There were four tracts of land distinct one from the other, which under the plaintiff's directions were put up and sold together, himself becoming the purchaser at the price of $200. In his own testimony he estimated them to be worth $5.00 per acre, and in the aggregate $1,575.00, if sold with no cloud upon the title.

The debt was contracted in March, 1862, and no homestead was allotted to the owner before the sale.

The defendant demurred to the evidence produced before the jury, as insufficient to sustain the action in two respects:

1. The manner of selling vitiated the sale, and the plaintiff acquired no title.

2. The homestead not having been set apart to the debtor, and the plaintiff's own proof being, that, had this been done, the excess would have been sufficient to pay the debt ($205.09), the sale was illegal and inoperative.

The Court ruling the sale to be void, sustained the demurrer, and from the judgment the plaintiff appealed.

Under the former practice a demurrer to the declaration, *overruled,* was followed by a final judgment, as thereby the facts were admitted for the purposes of the action. A demurrer to the evidence, when it was all in, (not unlike a motion for a nonsuit at this stage of the trial, except that the one was compulsory and the other voluntary, and the latter left the plaintiff free to bring a new action for the same cause;) *if upheld,* alike disposed of the action and operated as a discharge of the jury. Stephen Pleading, 13; Black. Com., 372; Sellon's Prac., 470.

It is otherwise under the present system, for if, interposed in good faith, the demurrer to the pleading be sustained, the party may plead over on such terms as may be prescribed, as if that defence had not been made. *The Code,* §272.

In analogy, if not upon a fair construction of the act, the legal effect of overruling a demurrer to the evidence would be to proceed with the trial, the jury being retained, while if it were sustained, the action would be terminated, unless the plaintiff obtained leave to introduce further evidence in support of his case.

While ordinarily a demurrer of this kind requires the setting out of the evidence in full, and the more so when no special defect is pointed out, yet it is otherwise if there is

*a fact shown which is itself an element in the complaint fatal to
the cause,* or is so adjudged to be, I can see no good reason for
stating in full evidence· wholly irrelevant to the point in-
volved in the adjudication, and which cannot effect the re-
sult.    Such in the present case is all that introduced and
heard upon the question of the fraudulent intent imputed
to the debtor in making the deeds to his two sons and sons-
in-law, inasmuch as the inquiry, however answered, does
not bear upon the ruling in the cause.    The decision turns
upon the point, whether there is ground for believing that
the homestead, or some part of it, might not have been se-
cured to the debtor after leaving out a part of the land suffi-
cient to discharge the debt, and this affirmatively appears
from the plaintiff's own statement of the value of the tracts
of land.

Certainly he cannot complain if his own statement is ac-
cepted as a correct valuation of the property; and so the
mandate of the statute has been disregarded by the sheriff
at the instance of the plaintiff and purchaser, one and the
same person.

When a sale is made contrary to the requirements of the
law, and the purchaser knows of and shares in the violation,
he can acquire no title, such as a sale made *not* at the court
house, or not on a *day authorized;* while the mere com-
pliance of the officer with some prescribed duty imposed on
himself, and not so known, such as a due advertisement of
sale, will not invalidate the sale.    In such cases the sale is
voidable, as decided in *Burton* v. *Spiers,* 92 N. C., 503; *Hin-
ton* v. *Roach,* 95 N. C., 106, and other authorities.

But it is void if the sale is not made at the time and place
prescribed by law.    *State* v. *Rives,* 5 Ire., 297.

The plaintiff insists, and in this he is sustained in the
opinion of Mr. Justice Davis, that as the sale was to satisfy
a debt contracted before the homestead law was in force, it
was not void, but voidable only, even if, when laying off the

exempted part, there would be an excess sufficient to dis-charge the claim, and this upon the authority of the ruling in the Kearsey case by the Supreme Court of the United States, and of this Court in *Gheen* v. *Summey*, 80 N. C., 187, and made two and a half years later. The latter case in general terms gives some countenance to the idea that the provisions for exemption are inoperative against process to enforce old debts.

But the declarations in that case have been since ex-plained and corrected, and the true principle announced and vindicated, as shown in the opinion of Justice MERRIMON. The statute cannot violate the obligation of contracts, when it leaves all the debtor's property, before liable to execution, still so liable, and simply regulates the manner in which it is to be subjected. It withdraws nothing of the debtor's property from the creditor, for, if need be, all can be sold and applied to his debt, but it directs primarily the excess above the exemption to be taken, and the exempt part only to be taken when the excess proves deficient. Cannot the State regulate the manner in which the property of debtors may be reached, and what portions shall be first applied? Does the creditor lose anything when he can exhaust all the debtor possesses until his demand is satisfied, because priori-ties of liability are declared? The decision in the Kearsey case goes no further than to declare void enactments that screen some of the property from liability to process, and in this way impairs the contract by preventing the application of a part withheld to its discharges.

It is all important that the law be settled and understood, and I am unwilling to disturb the adjudications heretofore made.

In my opinion, it appearing upon the plaintiff's own show-ing, that the value of the tracts exceed in value both the debt and the full measure of the homestead, the sale is void, and the judgment ought to be affirmed.

No error.                                     Affirmed.