DANIEL M. MORRISON v. JOHN G. WATSON.

*Constitution—Execution Sale—Homestead—Evidence—Burden of Proof—Opinion.*

1. It is essential to the validity of a sale under execution issuing upon a judgment founded on a debt originating before the adoption of the constitutional provision for a homestead that a homestead be allotted to the execution debtor, unless it clearly appears that, at the time of the sale, the debtor did not own lands subject to execution of the value of one thousand dollars.

2. In such case the homestead should be allotted and the excess, if there be any, should be first sold, and if that is not sufficient to satisfy the execution, or if there be no excess, then the lands embraced in the allotment may be sold.

3. The *onus* is on the purchaser at execution sale to show that at the time thereof the debtor did not own real property of the value of one thousand dollars. (DAVIS, J., dissenting.)

4. Upon an issue of the value of a particular tract of land, it is competent to admit the opinion of a witness founded upon a comparison with his knowedge of other lands in the vicinity.

This was a CIVIL ACTION for the recovery of land, tried before *Connor, J.,* at the September Term, 1887, of RICHMOND Superior Court.

The plaintiff claimed title to the land described in the complaint, by virtue of an execution sale and Sheriff's deed made pursuant thereto.

The defendant denied that the plaintiff was the owner of the land, or that he wrongfully withheld possession thereof. He admitted being in the possession.

The following issues were, without objection, submitted to the jury:

1. Is the plaintiff the owner, and entitled to the immediate possession of the land described in the complaint?

2. Did the defendant, at the time of bringing this action, unlawfully withhold possession thereof?

3. What damages is the plaintiff entitled to recover?

The plaintiff put in evidence a deed from Z. F. Long, Sheriff, to himself, for the land in controversy, dated August 26th, 1882, which purported to convey the land in dispute; also one hundred and sixty acres in addition, made up of one tract of one hundred acres, one of fifty acres, and one of ten acres. The plaintiff also showed in evidence a judgment rendered at Spring Term, 1870, of the Superior Court of Richmond County, in favor of the executors of Stephen Pankey v. Thomas Watson, Peter Hanner and John G. Watson, for thirty-five dollars, with interest on the same from the 13th day of November, 1864, and the costs, docketed May 17th, 1870. Executions were regularly issued thereon until October 4th, 1873. On the 20th day of October, 1873, the judgment was transferred to Z. B. Moore. On the 2d day of April, 1879, leave was given the plaintiff in said judgment to issue execution, and on April 5th, 1879, an execution was duly issued thereon, which was duly levied upon the land in controversy, and the Sheriff proceeded, on the 9th day of January, 1879, to sell, when the same was pur-

chased by Z. B. Moore for the sum of forty dollars. On the same day he transferred his bid and judgment to the plaintiff. The plaintiff showed in evidence the note upon which the same was founded, executed by Thomas Watson, Peter Hanner and the defendant, John G. Watson, dated November 13th, 1863, and due twelve months after date. The plaintiff also showed in evidence a judgment in favor of Frank Sandford v. John G Watson, dated June, 1876, for $15.85, with interest from May 6th, 1860, upon which execution issued January 6th, 1879. No homestead was ever allotted to the defendant.

The plaintiff, for the purpose of showing that the lands of the defendant were, in January, 1879, worth less than $1,000, and the amount of the judgment, after objection by defendant and exception to its admission, introduced—

W. I. Everett, who testified that he knew the land formerly owned by John G. Watson, Sr., but did not know the dividing lines. He knew where the dwelling was, also the twenty-five acres; that in June, 1879, in his opinion, from three ($3) to four ($4) dollars per acre was a fair valuation. He could not say as to the eighteen acres. The whole tract contained two hundred and twenty-seven (227) acres. In respect to the one hundred acres, he only knew its value by comparison with other similar tracts in the neighborhood; had not been on it; could not say how long before 1879 he last saw the lands.

The plaintiff proposed to ask the witness the value of the one hundred acres. Objected to by the defendant, because the witness states that he cannot give the value of the land except by comparison with other tracts in the neighborhood. Objection sustained; plaintiff excepted.

There was much other testimony as to the value of the lands.

The counsel for the plaintiff requested the Court to charge the jury:

1. That there was no evidence that the defendant was worth, in June, 1879, one thousand dollars and the judgment, interest and costs, amounting to eighty-three dollars.

2. That upon the whole evidence the plaintiff was entitled to recover.

The Court declined to so instruct the jury, and the plaintiff excepted. The Court then instructed the jury that they could consider the whole evidence, and, after ascertaining the value of the land, per acre, in June, 1879, they should make a calculation as to its total value.

The Court then explained to the jury the issues, and the way in which the testimony should be considered with respect to them, and instructed them that they could consider the return on the execution, in passing upon the question whether the defendant had other property than the land covered by the Sheriff; and that to recover in this action the plaintiff must show, by a preponderance of the testimony, that the defendant's land was worth, in June, 1879, less than one thousand dollars and the amount of the judgment, interest and costs, amounting to $83, and that the defendant had no other property which could have been sold to pay the judgment.

The jury found the first and second issues in the negative.

Motion for a new trial, for reception of the evidence objected to, and for refusing the instruction asked, and for error in the instruction given.

Motion denied. Judgment in accordance with the verdict. Appeal by plaintiff.

No counsel for the plaintiff.
*Mr. C. W. Tillett*, for the defendant.

SMITH, C. J. No homestead was allotted to the defendant in the course of these proceedings, and to the present action he opposes the defence that, without on allotment of his

exemption, notwithstanding the debts antedated the Constitution, in order that the debts might be satisfied from the excess, if sufficient remained to discharge it, out of the land in exoneration of the homestead, the sale was illegal and the deed did not divest the title.

This construction finds support in the ruling of the Court, though not unanimous, upon the point in the elaborately argued and carefully considered case of *McCanless* v. *Flinchum*, 98 N. C., 358.

While it is conceded that under the Constitution of the United States, as construed and applied to the exemption enactment, a debt previously created, and before the State Constitution was adopted, must be paid out of the debtors estate, and the exemption must give way when it cannot be otherwise satisfied out of the debtors property, (*Edwards* v. *Kearzey*, 96 U. S., 595,) yet the debtor possesses still the right to retain, exempt from sale, even at the instance of such a creditor, whatever excess there may be in his hands after the disposition of so much as may be needed to discharge the debt, and to have the inquiry made in the mode prescribed by law to have the fact ascertained previous to the sale. Should the sale of the part estimated to be sufficient turn out not to be insufficient, the creditor may then have recourse also to the part assigned as exempt. *The Code*, § 502, *et seq.* The debt must be paid at all events, but the method of proceeding, in appropriating the property liable, is a matter of legislative regulation.

Were it an open question, it might admit of doubt, whether this must not be done in all cases by the assessors, as the statute provides, to render valid the enforcement of the process in the Sheriff's hands, and before he undertakes to sell the real estate, instead of instituting such an inquiry before the jury, in an action to establish title and recover possession of premises thus sold. But it has been held that when the real estate is manifestly deficient, and it shall so appear after-

wards, such sale will be upheld upon the ground that no harm has come or could come to the debtor by reason of an omission to have a proceeding to ascertain if any homestead could be secured, and therefore it would have been useless and without detriment to the debtor. It is thus held in *Miller* v. *Miller*, 89 N. C., 402; *Arnold* v. *Estis*, 92 N. C., 162; *Lowdermilk* v. *Corpening*, Ib., 333; and other cases to same import.

In *Littlejohn* v. *Egerton*, 76 N. C., 468, the homestead had been set apart, but ineffectually, because not assigned by metes and bounds as prescribed by the statute, and the defendant, claiming under the Sheriff's deed a full estate in the land, had come into possession, and refused to admit the exemption. The Court, recognizing the right of homestead, but unable to restore possession to the plaintiff, suspended further action in the case until the plaintiffs could, in the regular way, have their exemption ascertained and set apart, giving them leave, on filing a certified copy of the allotment, to move for a writ of possession. The interruption in the progress of the cause grew out of the want of power in the Court to have this done under its direction, and the necessity of pursuing the statutory requirements to secure the full benefits of the constitutional provision.

So, if the parties in this case occupied to each other similar instead of reversed relations it would be safe to pursue the same course, and thus enable the debtor to regain his lost possession in furtherance of his legal right to retain possession until the Sheriff, after causing his homestead to be ascertained and its boundaries fixed, should make sale under his execution. Such is not the case before the Court, but the plaintiff seeks to dispossess the defendant, by virtue of the deed of the Sheriff, who sold, as the record shows, a large body of land to satisfy an inconsiderable debt, disallowing any right of homestead or any proceeding to find out whether

101—22

the value of the land was not sufficient both to satisfy the debt and leave some portion to the debtor.

It has been repeatedly declared, and after an elaborate and exhaustive examination of the subject in separate opinions settled by a majority of the members of the Court in *McCanless* v. *Flinchum*, already cited, that, without regard to the time of origin of the debt, the provisions of the statute for laying off the homestead must be observed, because the debtor has a right to the exemption if the debt can, with costs, be satisfied out of other lands, and to this end the assessors should allot, within the prescribed limits, so much as in their judgment is not needed to pay the judgment, subject, however, to the creditor's right to have the exempted part sold also, if the other, on such sale, proves insufficient and the debtor fails, in any way, to provide for the unpaid residue.

In the case referred to, MERRIMON, J., uses this language: "The Court ought to have instructed the jury to inquire particularly whether or not the land in question was worth more than the debt of the execution creditor and the costs, including the costs of laying off the homestead of the execution debtor, and if they found that it was, then the *plaintiff could not recover, because it appeared that the homestead had not been laid off* as the law required, and in that case *the Sheriff had no sufficient authority to sell the land,* and therefore his deed to the plaintiff was void."

Many witnesses were examined in reference to the value of the lands at the time of the execution sale, to the reception of whose evidence, offered by the plaintiff, the defendant objected. To this exception to the course taken by the Court, we have only to say that it has the sanction of the case from an opinion of which we have already quoted a part.

The force of the objection to the witness Everett, first examined, being allowed to put in an estimate upon the land, based upon the value of other tracts in the neighborhood, is

not apparent, for we do not see how otherwise, unless upon an actual sale of the lands themselves, any reliable estimate could be arrived at. This must, of course, rest on the valuation given other similar lands, irrespective of the effect of improvements.

The references to *Warren* v. *Makely*, 85 N. C., 12; *Bruner* v. *Threadgill*, 88 N. C., 361, do not sustain the exception. In the first, an inquiry as to the price brought upon a sale of an adjoining tract some twelve months before, simply made in this form, and with no intimation of further evidence of the similarity of their condition, or of any particulars that enter into an estimate of value, was ruled out.

Similar proof was offered in the other case of the value of a town lot opposite to that whose value was the subject of inquiry, and was rejected as incompetent. Neither goes so far as to deny to a witness the expression of an opinion of the value of certain lands founded upon the general value of other lands near thereto, for this is usually a safe, if not the only guide to the formation of a reliable opinion as to the value of that in controversy.

The issue submitted to the jury are the first three of those passed on at a former trial, omitting the fourth, and which will be found in the case as reported in 95 N. C., 479, which was suggested in the opinion then delivered.

The instructions demanded and declined proceeded upon a misapprehension of the point of inquiry, which is not whether a full homestead of $1,000 could be taken from the land and then enough left to satisfy the judgment, interest and costs, amounting to $83, but how much would remain for the use of the debtor after the discharge of the execution, for if he could not get the full measure of the exemption, the debtor would still be entitled to what was not required after providing for such payment. So, the issue was not what is implied in the instruction requested, but would the debtor have any land left after satisfying the debt, and if so, it should have been ascertained and assigned, the neglect to

have which done before the sale renders the same void, and hence the plaintiff is not the owner. Such is the response of the jury to the question of the plaintiff's title and right to recover possession.

The refusal to give the second instruction was also proper, for there was evidence to warrant the negative answer returned by the jury.

The charge given is obnoxious to no just complaint of the plaintiff, for it requires him to show that the lands were worth less than $1,000, the maximum allowed for the homestead increased by the debt, interest and costs. It is based upon the erroneous idea that the debtor is only entitled to the exemption when he can get the full measure of the allowable value, while he is entitled to a fractional part of less value, if there be such excess over the demands of the writ, as truly as he would be to the large quantity, if it were sufficient to give him more without interference with the collection of what sum the demand requires. This, however, was favorable to the plaintiff and injurious only to the defendant. It is equally imperative that the debtor have exempt the excess, whatever it might be, and a part as well as the whole.

There being no suggestions of the defendant's owning other lands, we understand that there were none other than those mentioned in the case.

The exceptions to the charge is general, pointing out no specific errors committed, and could not be, for this reason, noticed in the appeal. We refer to this case as reported in 95 N. C., 479, and to *Miller* v. *Miller*, 89 N. C., 402, in further elucidation.

There is no error, and the judgment is affirmed.

Affirmed.

DAVIS, J., (dissenting.) The judgment, upon which the execution under which the land was sold and purchased by

the plaintiff, was for the |recovery of a debt antedating the Constitution and laws providing for homestead, and I do not concur in the opinion that the sale was invalid because the Sheriff had not caused the homestead to be allotted, as I understand the decision of the Supreme Court of the United States in *Edwards* v. *Kearsey*, 6 Otto, 595, reported in 79 N. C., 664, and the decision of this Court in *Gheen* v. *Summey*, 80 N. C., 187; *Earle* v. *Hardie*, Ib., 177, and *Richardson* v. *Wicker*, 80 N. C., 172, in conformity with that decision and immediately following it.

Art. X, sections 1 and 2 of the present Constitution, and the legislative enactments for carrying that article into effect, are void as to contracts made prior to the adoption of the Constitution, because they violate that provision of the Constitution of the United States, which declares that, "no State shall pass any * * * * law impairing the obligation of contracts."

In *Edwards* v. *Kearsey* it is said: " The obligation of a contract includes everything within its obligatory scope. Among these elements nothing is more important than the means of enforcement. This is the breath of its vital existence. * * * The ideas of right and remedy are inseparable." It will not do to say that the law affects the *remedy* and not the rights of the parties to the contract. If the law affecting the remedy impairs the obligation of the contract— lessens the value of the contract—it is void, and "it is immaterial whether it is done by acting on the remedy or directly on the contract itself. *In either case it is prohibited by the Constitution.*" The italics are as reported.

It is also said in the same case: " The remedy subsisting in a State where and when a contract is made, and is to be performed, is a part of its obligation, and any subsequent law of the State which so affects that remedy as substantially to impair and lessen the value of the contract is forbidden by the Constitution, and is therefore void."

Following that decision, and referring to it as settling the question, this Court in *Gheen* v. *Summey, supra,* said "The act of 1869, (*The Code,* § 502, *et seq.,*) so far then as it pro-vides the machinery for laying off and allotting the home-stead against debts contracted prior to the 24th of April, 1868, the date of the adoption of the Constitution, is void, but perfectly valid as to all contracts entered into subsequent to that date." To the same effect was *Earle* v. *Hardin, supra.*

Again, referring to *Edwards* v. *Kearsey,* in *Richardson* v. *Wicker,* 80 N. C., 172, this Court not only said that the ex-emption "provided for by the Constitution of 1868 were not allowable against debts previously contracted," but it was further said in effect that it was the duty of the Sheriff to have made the money on the plaintiff's execution, and that for his failure to do so the plaintiff could have maintained an action for such damages as he had sustained. In that case the Sheriff had returned the execution without selling defendant's land, because the plaintiff had not paid nor tendered the fees for laying off the exemption. While it was held that the Legislature might repeal the penalty amercement for failing to sell under the execution, it is said that "there is no doubt he (the plaintiff) could have main-tained such action," that is, for damages.

In these cases it is held that the provisions enacted for carrying into effect Article X of the Constitution in relation to homesteads are void as to contracts made anterior to their enactment; and I think these authorities, based as they are upon an acquiesence in the decision of the Supreme Court of the United States in *Edwards* v. *Kearsey,* in which the constitutionality of the law under which it is insisted that the deed of the Sheriff, in the case now before the Court, i void, was the immediate subject of investigation, should be adhered to.

*Wilson* v. *Patton,* 87 N. C., 318; *Albright* v. *Albright,* 88 N. C., 238, and *Arnold* v. *Estis,* 92 N. C., 162, so far as the

.questions decided by them are involved, may, I think, be easily distinguished from the case before us, and from the cases cited, and so far from being in conflict, by the clearest implication they are in harmony.

In *Wilson* v. *Patton* the land was sold by the Sheriff without laying off the homestead, but there were executions in his hands on old and new debts; there. was more than enough money from the proceeds of the sale to satisfy the execution on the old debt, and the money being in the hands of the Sheriff, he asked instruction of the Court as to the application of it, and it was held that after applying enough of the proceeds to satisfy the old debts, the defendant (who made no question as to them) was entitled to an interest in any remainder not exceeding the value of his homestead. As against the executions on the old debts no question was raised as to the right of the Sheriff to sell without laying off the homestead, and the validity of the sale was not questioned.

In *Albright* v. *Albright,* there were executions on old debts and new debts, and besides, there was a mortgage, and at the instance of the debtor (who made no question as to the old debts, and who did not ask for any allotment of the homestead) the Court was asked to restrain the Sheriff from selling till conflicting rights and priorities of creditors could be settled, so that the land could be sold to the greatest advantage, and "free from all clouds." It was not even claimed as against the old debts that the Sheriff should first lay off the homestead, and certainly not at the expense of any execution creditor on an old debt.

In *Arnold* v. *Estis,* the execution creditor was the purchaser. The judgment was on old and new debts, blended, and the land was sold by the Sheriff without having the homestead allotted. It was held that the sale was void, and it was put upon the ground that it was the fault of the purchaser in blending the old and new debts and selling under both ; and

the CHIEF JUSTICE, quoting *Mebane* v. *Layton,* 89 N. C., 396, said : " A sale without laying off the homestead, unless in case of the several exceptions mentioned above, is unlawful and void." One of the " several exceptions" alluded to was on an old debt; and is not the inference irresistable that a sale under an execution on an old debt would *not* be " unlawful and void ?" What other possible inference could be drawn ?

In *Miller* v. *Miller,* the sale was made by the Sheriff without allotting the homestead, and the sale was held to be void; and though the reasoning in that case was in conflict with the authorities cited, the decision was not.

I think it is conceded that the execution on an old debt must be satisfied, at all events, before the debtor is entitled to a homestead, and that the execution creditor is not bound by the valuation that may be placed upon the debtor's land by the assessors or appraisers, and if the excess, when sold, does not bring his debt, then he may sell the homestead which has been allotted; and if so, why require the creditor to do the vain thing of paying the cost of an allotment in which he has no interest whatever, and by which he is not bound ?

It is admitted that if the debtor's property is sufficient to pay the debt, it must be paid at all events, homestead or no homestead. In fact, it would seem that no one would be bound by such an allotment, for, as in the case of *McCanless* v. *Flinchum,* the execution debtor made no claim to the homestead. He had sold (whether fraudulently or not) what interest he had in the land, and was bound by that sale. The alleged fraudulent vendee, who claimed the land, clearly was not bound by it, for he claimed title, under the debtor's deed, adverse to everybody; and if his purchase was not fraudulent, then his title was good against everybody; if it was fraudulent, then it was not good against the execution creditor; so the creditor in whose favor there is a judgment and an execution on an old debt is driven (not at the instance of

the execution debtor or any one else claiming title or interest in the land) to the expense of having a homestead allotted, which allotment, when made, is binding on no one claiming title to the land.    If this is not such a change in and obstruction to his remedy, as it existed prior to the change, as impairs the value of his contract, I am at a loss to conceive what change in the remedy could do so.

But it may be asked, if a debtor has $10,000 worth of land, must it be sold without allotting the homestead, because the creditor has an old debt judgment and execution?    My answer is, the debt being an old one, it is a matter with which the creditor has nothing to do.    It is the duty of the Sheriff, if the defendant in the execution has property not exempt by the law, as it was prior to April, 1868, to sell enough of it to satisfy the execution ; and, in doing so, it is his further duty to sell to the best advantage he can, and if the debtor has more than enough to satisfy the execution he may, without expense to anybody, designate what property shall be sold, and the Sheriff would not be justified now, any more than he would have been before 1868, in selling unlawfully $10,000 worth of land to satisfy an execution of $100.

As has been said, it is the duty of the Sheriff to sell to the best advantage.    He sells only the interest of the defendant, and if by his own denial of the Sheriff's right to sell, or by any obstructive act of his own, his interest brings at public sale only a small portion of its worth, the purchaser gets it and it is the debtor's own folly.    The only valuation by which the execution creditor is bound (the debt being any one of the excepted classes) is that of the highest bidder ; and I think *Littlejohn* v *Egerton,* and like cases, decided by this Court in regard to old debts were, with *Edwards* v. *Kearsey,* overruled by the ultimate decision in the last named case.    How far the Legislature may control or change the *remedy,* without violating the Constitution, has been the subject of much discussion in the Courts of the States and of the

United States.    There is an able and elaborate discussion of the question by Chief Justice Taylor in *Jones* v. *Crittenden*, 1 C. L. Rep., 385, in which the stay-law, passed in 1812, was declared unconstitutional and void as impairing the obligation of contracts, and similar decisions have since been made in *Barnes* v. *Barnes*, 8 Jones, 366, and in *Jacobs* v. *Smallwood*, 63 N. C., 112.

I think, as a result of the discussion, it has been settled that the Legislature has the power to alter the law respecting the remedy or to abolish one tribunal and substitute another, provided there is an *efficient* remedy left or substituted, and one that will not impair or lessen the value of contracts.

Stay-laws have been declared unconstitutional as to antecedent contracts, as impairing their obligation, and though it has been said, and truly said, by Justice MERRIMON, in *McCanless* v. *Flinchum*, that " the law favors the homestead," yet the decision of the Supreme Court of the United States in *Edwards* v. *Kearsey*, and the authorities there cited, seem to me conclusive that, under the Constitution of the United States, it cannot confer that " favor " at the expense of a creditor whose debt antedates the homestead law.

It is with much diffidence that I dissent from the opinion of a majority of the Court in a matter fully discussed and carefully considered, but I am unable to take the same view of the Constitution, and of the force and effect of the ruling of the Supreme Court of the United States in *Edwards* v. *Kearsey*, as that which has impressed them, and I have felt it my duty to express my non-concurrence, and, as briefly as I could, my reasons therefor.