CLERK'S OFFICE *vs.* THE PRESIDENT, DIRECTORS AND COMPANY OF THE BANK OF CAPE FEAR.

1. When an execution for costs, incurred in this Court, has been returned unsatisfied, and the party is insolvent and entitled to moneys, in the Clerk's office of this Court, *ordered,* that the office costs be deducted from the moneys so due to him.

2. Although such execution–debtor is adjudicated a bankrupt, it will not affect this conclusion, as, the assignee, *quoad hoc,* takes, subject to all the *equities* of the bankrupt.

3 The position and legal *status* of an assignee, discussed and explained, by RODMAN, J.

The cases of *Clerk's Office* v. *Allen,* 7 *Jones,* 156, and *Carr* v. *Fearington,* 63 N. C., 560, cited and approved.

This was a motion, by W. H. BAILEY, Attorney on behalf of the Clerk's Office, to order the Clerk to deduct from the amount of money belonging to the defendant in Court, the

amount of a bill of costs against it, in favor of the officers of this Court.

It was admitted that the defendant is a bankrupt, and had been so declared, since the last term of this Court.

The facts were, that Nathaniel Boyden had recovered his costs of this Court, $42.10, against the defendant on an appeal. See *Boyden* v. *Bank*, 65 N. C.,); it was further shown that an execution in favor of the bank had issued, tested of June Term 1871, of this Court against one Caldwell, for $324, and that the amount thereof had been paid into the office of the clerk of this Court, in satisfaction of an execution which had been issued upon the same, and, that it was now in the hands of the Clerk of this Court.

*W. H. Bailey* in support of the motion :

I. On the general question. *Clerk's Office* v. *Allen*, 7 *Jones* 156. *Turner* v. *Kendall*, 1 *Cr.*, (*U. S.*,) 116.

II. Assignee takes, subject to all equities. 2 *Story, Eq.*, *Juris, secs.* 1038, 1228, 1229 and 1411.

*J. M. McCorkle,. contra.*

"No lien can be acquired, *or enforced*, by any proceeding in a State Court, commenced after the petition is filed. *Bump's Law on Bankruptcy*, (4th edition,) 360. See case *in re Wynne* 4 *B. Register*, 5.

How can any lien be created upon the money in the office which did not reach the office till *after* an adjudication in bankruptcy ? See Bankrupt Act, sec. 20. The C. C. P., creates no lien on personalty till after levy. In our case, defendant is a bankrupt.

No other, but the Court of Bankruptcy, can interfere with the estate of an adjudicated bankrupt. See *Bump on Bankruptcy*, 276, (4th edition.)

*In re McIntosh*, 2 *Bankrupt Register*, 158, where Judge Brooks holds that no *lien* is created until a levy. Here there, was none, and cannot be *after the adjudication*. See also *IV*, *A. L. Review*, 543, title "lien," *V*, *A. L. Review*, 523, title "lien."

RODMAN, J. *Case.* At June Term, 1871, of the Supreme Court, the Bank of Cape Fear, recovered a judgment against R. A. Caldwell for $324, and costs 90 cents, upon which a *fieri facias* execution isssued, tested the 1st Monday in June, 1871, and returnable to January Term, 1872, under which the money was paid into the Clerk's office, where it now is.

In the same case, it was adjudged that the said Caldwell, recover of the Bank, costs, taxed at $4,20, for which, a like execution issued against the Bank, and is returned unsatisfied.

At the same Term, (to-wit: June, 1871,) Nathaniel Boyden recovered against the Bank, costs of the Supreme Court, taxed at $42,10, (forty-two 10-100 dollars,) upon which a like execution issued, and is returned unsatisfied.

The Bank was adjudicated a bankrupt, on a day not particularly stated, but just before, or just after the commencement of this term, and an assignee has been appointed. It is moved on behalf of the Clerk's office, for an order to retain the above costs out of the funds in Court.

If the question was unaffected, by the operation of the Bankrupt Act, there could be no doubt about the power of the Court. The case of *Clerk's Office* v. *Allen*, 7 *Jones*, 156, shows the practice prior to C. C. P., and the power is not taken away but rather confirmed, and extended by sections 265, 266, 268, and 269, of the Code.

It is contended, on behalf of the assignee in bankruptcy, that the whole sum recovered against Caldwell, passed to the assignee, under section 14, of the Bankrupt Act, subject only to existing liens, and that here is no lien, and, therefore, it is not

in the power of this Court, to apply any part of the fund in the way proposed.

We do not profess to be familiar, with the decisions of the numerous bankrupt courts throughout the country, nor have we access to the books, in which they are reported. None of the cases cited to us, by counsel from the Bankrupt Register, so far as we can judge from the brief extracts furnished to us, appear to decide the present question, and we must, therefore, be governed in our opinion by general principles.

It is conceded, that this is not a case of lien. But we conceive, as was said in *Carr* v. *Fearington*, 63, *N. C.*, that an assignee in bankruptcy, more nearly resembles a purchaser of the bankrupt's property, at an execution sale, than any other familiar character to which we may liken him. He takes the bankrupts' rights, but he takes something more, he is not bound by the fraudulent conveyances of the bankrupt, as he himself would. He cannot take paramount to all equities, against the bankrupt, as, in many cases that would be manifestly unjust. The only intermediate position possible, is that of a purchaser at execution sale, who acquires the rights of the debtor in the property, and also, the rights of the creditor to impeach any prior fraudulent conveyances, but who takes, subject to all equities against the debtor, in the property purchased. This view of the character of the assignee, is sustained by sections 1038, 1228, 1229 and 1411, of 2 *Story's Eq. Jur.*, to which we were referred by counsel. In this case, we think, there was what may be called, an equity, existing in the Clerk's office to have its costs paid out of the fund of the bankrupt in court, and affecting the particular property, of which, the assignee may be called the purchaser, and subject to which, therefore, he took. We do not see, that it can make any difference, whether the adjudication of bankruptcy, was before or after, the commencement of the present term of this Court. So long as the fund came lawfully into this Court, it remains there under its control, and subject to be applied according to its usual

practice. We not think, that it was the intention of the Bankrupt Act, to deprive the ordinary Courts of that power. It is not the giving of a preference to one creditor of the bankrupt, over another; but merely the giving effect to an equity, existing, by virtue of the long-settled regular practice of the Courts.

The Clerk will retain the costs due his office out of the fnnd, and pay the residue to the assignee of the bankrupt.