## *J. W. C. LONG v. W. A. WALKER.

*Constitution— Contract— Costs—Homestead and Personal Property Exemptions—Judgment—Execution Sale—Lien—Stare decisis.*

1. One C., as executor, recovered judgment against the defendant on a debt due to his testator by contract before the year 1867, and caused execution to issue.　The defendant paid to the Sheriff the principal and interest of the judgment, and took his receipt therefor (not including costs).　The Sheriff sold the land of defendant, already levied on to satisfy the costs, at which sale plaintiff bought and brings this action to recover possession: *Held*, that the right to recover disbursements, in case of default in payment, being secured by law, when the contract was made, entered into and formed a part of it, and such costs as incidents of the judgment constitute a lien upon the same property, and to the same extent, as the principal and interest of the debt.

2. This lien exists in favor of the officers of the Court when they do not require the plaintiff, as they have a right to do, to pay their fees in advance.　In such instances the officers (Sheriff and Clerk of the Court) have the right of retainer to the extent of the costs out of the amount collected, and neither can be compelled to look exclusively to the plaintiff's prosecution bond, nor prevented from exhausting his remedy against the debtor, by reason of any receipt or compromise between the judgment creditor and debtor.

3. The receipt given in this case did not operate, like the receipt of principal and interest of a debt, while suit is pending for its collection, to extinguish plaintiff's claim against defendant for the costs incident to the action, in the absence of some special agreement to the contrary.

4. If the sale of defendant's land under the execution would have been valid without allotting him a homestead thereon, when the principal and interest of the debt had not been paid, the estate of the debtor passed to the plaintiff under the sale to satisfy the costs due by virtue of the execution.

5. A creditor by contract has a vested right either to the remedy for the recovery of his debt, that existed when the contract was made, or another sufficient remedy in its stead.

---

*Head-notes by AVERY, J.

6. In altering the remedy a State cannot, by law, impair its efficacy in the least degree, because the right to impair means a license to destroy.

7. Before the year 1867 the creditor could cause execution to issue against the real and personal property of the debtor, and if there were no personal goods, or, in the opinion of the Sheriff, not suffi- cient to satisfy the debt, the officer was required to levy upon and sell, without embarrassment to the creditor, the whole body of the debtor's land, if necessary, and at all events his entire interest in that sold.

8. If the new remedy, as compared with that provided when the con- tract was made, has a tendency to diminish the value of the debt in the least degree, it is unconstitutional.

9. If the creditor is required to pay the costs of allotting any home- stead in advance and of selling successively the excess, the rever- sion and the homestead itself, and incurs the risk of paying such expenses without reimbursement, if the proceeds of all do not pay his debt, the value of the debt is diminished by the sum total of such expense and by the decreased amount realized by selling the reversionary interest and homestead separately.

10. It impairs the remedy and diminishes the value of the debt if neither the plaintiff in execution, nor any other person, can cause the land to bring its value at sale without allotment of the home- stead, and buy it without incurring the risk of having the valid- ity of the sale successfully impeached after the lapse of years, by a finding of a jury that the land was worth over one thousand dollars when sold.

11. The value, in the year 1867, was the amount the land would bring under execution, and the purchaser at such a sale got a good title, unless fraud, such as preventing a fair competition of bidders, was shown, and the burden was then on one who attacked the sale for fraud to prove it, while under the principle laid down in *Morrison* v. *Watson* the burden would rest forever on a purchaser at a sale without laying off a homestead to show the true value of land bought to have been less than one thousand dollars, or have his deed declared invalid.

12. After the decision in the case of *Edwards* v. *Kearsy* (96 U. S., 100), this Court and the Legislature of the State declared the Act of 1869 unconstitutional as to debts contracted before the 24th of April, 1868, and the liabilities of citizens were settled by the sale of land to satisfy debts created before that date without allottment of homesteads.

13. The general policy of adhering to the last decision of a Court is subject to the limitation that inadvertent decisions must be overruled, unless they have been acted on for a long time, and property has been bought because of the public faith in the principle decided.

14. Where the adjudications of a Court in construing a statute or the organic law seem to have been wrong originally, but have been recognized as authority for years, and titles to property have been accepted through faith in their stability, they become a sale of property and ought, for the sake of certainty to be observed as if they had originally formed a part of the text of the statute.

15. Where a creditor, acting upon the principle laid down in *Morrison* v. *Watson* has caused the debtor's homestead to be laid off and sold, first the excess, then the reversionary interest in the homestead, and then the homestead itself, all such sales are valid.

16. The case of *Morrison* v. *Watson*, 101 N. C., 332, is overruled in so far as it declares a sale under execution to satisfy a debt, arising out of a contract made before the 24th of April, 1868, void for failure to lay off the homestead of the debtor.

This was a CIVIL ACTION, tried at the May Term, 1889, of the Superior Court of IREDELL County, before *Brown, J.*

The plaintiff claimed under a Sheriff's deed, executed September 5, 1887. The Sheriff sold by virtue of an execution issued on a judgment against the defendant, rendered on a cause of action *ex contractu*, that arose prior to the year 1867. But while the execution was in the hands of the Sheriff, the defendant Walker paid to the plaintiff, in the execution of the principal and interest of the judgment, but no part of the costs, and took his receipt in form as follows:

"Received of W. A. Walker one hundred and forty-nine $\frac{88}{100}$ dollars in full payment of the principal and interest of the debt (not including costs) in the judgment of the Superior Court of Iredell County in the case of John F. Long and W. H. Cowan, administrators of W. F. Cowan, deceased, *against* G. W. Weir and wife, W. A. Walker and others. This 30th day of March, 1887.

(Sig.)        WM. H. COWAN, Ex'r of W. F. Cowan."

The Court submitted, without objection, the issues herein set out, which, with the findings of the jury, are as follows:

1. At the date of the execution sale, did the defendant occupy the lands described in the complaint as one farm and tract and reside thereon and cultivate and use the same as such? Answer, Yes.

2. Was the principal and interest of the judgment and execution under which the lands were sold, paid to the plaintiff therein in full before the sale, and did he satisfy and discharge said principal and interest? Answer, Yes.

3. If so, did plaintiff Long have notice at time and before said sale that said principal and interest had been fully . paid? Answer, Yes.

4. What was the value of said lands at date of said sale? Answer, $1,900.

5. What is the annual value or rents of the part thereof called "Luck" land? Answer, $45.

6. What was the value of the part of said lands described in complaint called "Walker" land? Answer, $1,450.

After the issues were found by the jury, the plaintiff moved for judgment for the part of the land described in complaint as the Luck tract of land, plaintiff admitting that he was not entitled to recover the other part of the land known as the Walker land. Plaintiff also moved for judgment for rents of Luck land from date of purchase, September 5th, 1887. The plaintiff contended:

1. That it was unnecessary to assign the defendant's homestead because the judgment was rendered on a debt contracted prior to 1868.

2. That plaintiff disclaiming as to the tract called the Walker tract, the defendant would have all he was entitled to under the constitutional provision, and that plaintiff would, in any event, be entitled to the tract called Luck tract.

3. That although the jury find the second issue against the plaintiff, yet the costs remain unpaid, and that although said costs are admitted to have accrued since the year 1868, still they are an incident to the original debt.

The defendant inherited the Walker tract of from 250 to 300 acres from his father, and bought the Luck tract of 50 acres, many years ago, and added to it. He lived on the Walker tract, and still lives on it; but for many years prior to the sale, and since he bought the Luck place, has used the two as one farm, had a single fence that enclosed the cultivated lands on both tracts, and had the two listed as one tract for taxation.

There was judgment for the defendant, from which plaintiff appealed.

*Mr. D. M. Furches*, for plaintiff.
*Mr. W. M. Robbins*, for defendant.

AVERY, J.—after stating the facts: The law in force before the year 1867, when the contract between the testator of Cowan, the plaintiff in the execution, and the defendant Walker was made (Rev. Code, ch. 31, sec. 75), provided that, on default in payment, judgment for the debt, with "full costs," should be awarded to the payee in a suit brought for its enforcement. The statutory right to recover not only principal and interest, but disbursements incident to the prosecution of the action, therefore entered into and formed a part of the original agreement between the creditor and debtor, just as though the provisions of the law had been incorporated in it, and was, in legal intendment, one of the inducements to the former to loan the money or part with the property that constituted the consideration of the contract. Cooley's Const. Lim., p. 285; *Koonce* v. *Russell*, 103 N. C., 179; *Von Hoffman* v. *City of Quincy*, 4 Wall., 535.

The costs taxed by the Clerk when judgment is rendered, and that accruing in favor of the Sheriff while the execution is in his hands, may be collected by the officers in advance of discharging the duty, from the plaintiff, and the law gives the plaintiff a lien upon the same property, and to the same extent, for the security of his disbursements as for the principal and interest of his debt. Freeman, in his work on Judgments, § 338, says: "The lien of a judgment attaches to all the interests which the debtor had at the rendition of the judgment. A subsequent sale, under the judgment, *relates back,* so as to *transfer all the title* which the debtor had *when the lien attached. But where costs are incurred in enforcing a lien, they are to be paid out of the proceeds realized, and are preferred to the lien.*" See also Shelly's Appeal, 38 Penn. St., 210; *McNeill* v. *Bean,* 32 Vermont, 429.

But the case of *Knight* v. *Whitman,* 6 Bush. (Ky.), 51, is directly in point, and is decisive of the doctrine that the costs incident to the collection of a debt, and the enforcement of a judgment for it, are deemed to constitute a part (if not a favored part), of the debt, and any property liable to be subjected to the lien for the judgment debt may be sold for the costs. The Court of Kentucky say, in the opinion referred to: "It is insisted that, this judgment being in 1867, the homestead not being worth one thousand dollars, was not liable to sale under this execution, but was protected by our statute of February 10th, 1866, which enacted that, in addition to the personal property now exempt from execution on all debts and *liabilities,* created or *incurred after the first of June,* 1866, there shall be exempt from sale under execution, &c., so much land, including the dwelling-house, &c., owned by the debtor, as shall not exceed in value one thousand dollars. * * * Then it has been judicially ascertained that the defendant was liable to plaintiff when said suit was brought in 1865, and anterior to June 1st, 1866, therefore said homestead exemption statute is inapplicable.

\* \* \* It is said, however, *that the costs were subsequently incurred, hence the homestead was not liable therefor.* It is sufficient to say, that the exemption under the statute of February, 1866, is only applicable to debts and liabilities created or incurred after June 1st, 1866, so that in all that class of cases existing prior thereto there is no homestead exemption. *The costs of all such cases are only incidents attached thereto, and must be governed by the laws applicable to the debt or liability out of which they grow."* The only difference material for the purpose of this discussion between the homestead provision of our Constitution and the Kentucky statute, is that the latter, by its express terms, did not apply to antecedent liabilities, while the former was limited in its operation by the construction given it by the Supreme Court of the United States, as to contracts made subsequent to its adoption. In *Slaughter* v. *Winfrey,* 85 N. C., 160, which was an action by a landlord to enforce a lien for rent against his tenant, the late Chief Justice SMITH says, for the Court: "As the act requires the seizure of a sufficient part of the crop to meet the plaintiff's demand, and costs as well, it is obvious that both must be satisfied out of the proceeds of sale, when so adjudged by the Court. If it were otherwise, the rent would be practically reduced *by the cost incurred in obtaining it,* and to this extent the ample *security,* intended by the statute, be impaired by the use of the *necessary means of making it available* to the landlord."

But it was suggested, rather than contended, on the argument by defendant's counsel, that, though costs incident to the judgment may be collected, along with principal and interest, and retained out of the proceeds of a sale under execution by the Sheriff and Clerk, still the payment of principal and interest of the judgment to the creditor would destroy the lien of the incident, just as the receipt by a plaintiff from a defendant, without any specific agreement as to costs, of the full amount of a debt demanded in an

action pending for its collection, has been held to discharge the latter from liability to a judgment for costs of such suit. There is a wide difference, however, between the relations of the parties after the rendition of judgment and prior thereto. After judgment, the officers of the Court acquire the right to enforce the collection of their fees, and to all the security for the payment of them that the plaintiff had for his judgment debt, and, in addition, a right, in some instances, of retainer out of funds in the Clerk's office. *Clerk's Office* v. *Allen,* 7 Jones, 156; *Clerk's Office* v. *Bank,* 66 N. C., 214.

In *Clerk* v. *Wagoner,* 4 Iredell, 131, Chief Justice RUFFIN, delivering the opinion of the Court, says: "It has been usual for the officers of the Court to indulge the successful party for his costs until a return of his execution therefor against the party cast. If raised *on that execution, the officers, instead of the party, receive them.* It is clear that every party may be required to pay his own costs as they are incurred, or at any time when demanded. * * * In *Lockman's* case, 1 Dev., 146, it is true the execution against the successful party was not moved for until a return of *nulla bona* on a *fi. fa.* against the party cast." The Clerk has the right to retain the Court costs out of the amount returned by the Sheriff as net proceeds of sale after deducting his fees, and neither of them can be compelled, by reason of any compromise made by the judgment creditor with the debtor, to look exclusively to the former on his prosecution bond, or prevented from exhausting his remedy against the latter by the issue of execution and a sale of such property as may be found liable to be subjected under it.

It is manifest, therefore, that if the Sheriff was not required by law to have a homestead allotted to the defendant in his land, and levy first on the excess, if any, to satisfy the execution before the debt was paid to Cowan, it was no

more essential to the validity of the sale that it should have been done afterwards and before selling under the execution when only costs remained unpaid.

" The obligation of a contract is the law which binds the parties to perform their agreement." *Sturges* v. *Crowningshield*, 4 Wheaton, 122. " The prohibition has no reference to the degree of impairment. The largest and the least are alike forbidden." *Von Hoffman* v. *City of Quincy*, 4 Wall., 535 (7 Myer's Fed. Dec., sec. 1879). Looking to the governing principle, as settled by the Supreme Court of the United States, we find that the touchstone for testing the constitutionality of a statute, requiring a pre-existing creditor to pay for the appraisement and allotment of exemptions to his debtor before he can cause a levy to be made upon the property of the latter, is found in the question whether the enforcement of the law throws the smallest impediment in the way of the collection, or in the slightest degree diminishes the value of the claim below what it would have been if no such trouble and expense were incident to the sale.

The right of the States to alter the remedy has this limit, that they must not impair it, because the right to impair means a license to destroy. *McCulloch* v. *Maryland*, 4 Wheaton, 416; *Edward* v. *Kearsy*, 96 U. S., 600. " The obligation of a contract includes everything within its obligatory scope. Among these elements, nothing is more important than the means of enforcement. This is the breath of its vital existence. * * * One of the tests that a contract has been impaired is that its value has by legislation been diminished. *Ibid*, 600 and 601.

Upon the principle to which we have already adverted, the plaintiff in execution (Cowan) had a right to enforce the collection of his judgment in the manner and by the machinery provided by law when the debt was contracted, unless a new remedy had meantime been substituted by law, which would enable him to subject the property of the debtor with

as little embarrassment as under the former law, and without any diminution in the value of his judgment due to the new method of proceeding. Before the year 1867, the creditor could cause execution to issue on his judgment (under the provisions of ch. 45, secs. 1 and 2 Revised Code) against the lands as well as the personal goods of the debtor, and if there were no personal property, or, in the opinion of the Sheriff, not enough to satisfy the judgment, the officer would levy upon and sell, without expense or embarrassment, the whole body of his land, if necessary, and, in any event, his entire interest in that sold. Instead of this speedy, unrestricted remedy against the property of the debtor of every species, afforded by law when the contract was made, the creditor is now restricted to the circuitous method of selling the property by piece-meal, pointed out in *Morrison* v. *Watson*, 101 N. C., 340, and is subject to delay, hindrance and chances of serious loss by being forced to pay in advance all the costs of appraising the personal property exemptions and allotting the homestead preliminary to any sale and satisfaction at all, unless where he will assume the risk of showing the debtor's land is worth less than one thousand dollars. The requirement that a creditor must submit to this new exaction, not in contemplation of the parties when the contract was made, must, of necessity, diminish the value of the debt in the ratio of the risk, the outlay of money and the hindrance attending the prescribed method of collection, as compared with that incident to it under the law in force before the year 1867. To the extent of the diminution in the value of the debt, or the delay or hindrance caused by the change in the law, the remedy is impaired. *Bronson* v. *Knight.* 1 How , 311; *Evans* v. *Montgomery,* 4 Watts & S. (Pa.), 218; *Reade* v. *Frankfort Bank,* 23 Mo., 518; *Carson* v. *Arkansas,* 15 How., 513; *Oatman* v. *Bond,* 15 Wis., 28; *Mundy* v. *Munroe,* 1 Mich., 76. "The rule seems to be that in modes of proceeding and forms to enforce the contract, the Legis-

lature has control and may enlarge, limit or alter them, provided it does not deny a remedy or so embarrass it with conditions and restrictions as seriously to impair the value of the right." *Tenn.* v. *Sneed*, 6 Otto, 69. " A creditor by contract has a vested right to the remedies for the recovery of the debt, which existed at law when the contract was made, and the State Legislature cannot take them away without impairing the obligation of the contract, though it may modify them, and even substitute others, if a sufficient remedy be left, or another sufficient one be provided. *Memphis* v. *United States*, 7 Otto, 295.

But conceding, merely for the sake of argument, that it is doubtful whether the change in the remedy made in the construction placed upon *The Code*, §§ 502–508, in *Morrison* v. *Watson, supra,* is such as to bring the law within the inhibition of Art. I, § 10 of Constitution of the United States, as an unwarranted modification, still reason and public policy combine to dictate a return to the principles laid down by this Court and acted on in the adjustment of rights of property in the general settlement consequent upon the decision in *Edwards* v. *Kearsy, supra* (October, 1887). Prior to the publication of the ruling in that case, this Court had uniformly held the exemption laws embodied in Art. X of our Constitution, and the statutes enacted in pursuance of it, applicable alike, whether the appraisement was made necessary by a judgment arising on a contract entered into anterior or subsequent to the adoption of the Constitution on April 24, 1868; but a new judicial departure was rendered imperative when the foundation upon which the Court had been building for nine years was so suddenly swept away. Accordingly, in *Gheen* v. *Summey*, 80 N. C., 187, Justice ASHE, delivering the opinion of the Court, says: " The Act of April 7, 1869, being void as to debts contracted prior to the 24th of April, 1868, then *all the provisions of that act, with regard to the machinery for carrying out the provisions of the*

*Constitution are void as to the same class of debts."* At the same term (January, 1879), but earlier, this Court decided *Earle* v. *Hardie*, 80 N. C., 177, the first case in which this question of the validity of the Homestead Machinery Act (Battle's Rev., ch. 55, Act of April 7, 1869), as applied to contracts created before April 24, 1868, was discussed after the decision in *Edwards* v. *Kearsy*, and the Court said : " The second section of Art. X of our Constitution of 1868 having been declared void as against debts previously contracted, the Act of the Legislature, passed on the 7th of April, 1869, * * * to carry its provisions into effect, *is also void."* The same principle was held at that term in *Gamble* v. *Rhyne*, 80 N. C., 183, to apply to the personal property exemption, and in more decided language (at the January Term, 1880) in *Carlton* v. *Watts*, 82 N. C., 212, where the Court says: " This being an old debt, contracted in 1860, the defendant was not entitled to the exemption of five hundred dollars guaranteed by the Constitution, but only to such exemption as was secured to him by the law existing at the date of the contract." Again, at October Term, 1882, in *Wilson* v. *Patton*, 87 N. C., 318, this Court recognized the validity of a sale without allotting a homestead, because three of the seven executions under which the Sheriff sold were issued on judgments rendered on old debts and in adjusting the distribution of the proceeds of sale the Court held that all of the fund might be applied, if required, in satisfaction of the three judgments; but that an equivalent in money of one thousand dollars must be treated as the homestead against the other debts, thus again reiterating in substance the principle first laid down in *Earle* v. *Hardie*. In *Grant* v. *Edwards*, 86 N. C., 513, it was again announced that the Act of 1869 was not intended to apply where execution issued on old debts.

As is clearly demonstrated by Justice Davis, in his dissenting opinion in *Morrison* v. *Watson*, 101 N. C., 340, the

case of *Albright* v. *Albright*, 88 N. C , 238, was decided upon a principle that in no way involved this question; and in that of *Arnold* v. *Estis*, 92 N. C., 162 (February Term, 1885), the decision rested on the ground that the sale was made to satisfy a new, as well as an old debt, and was held invalid for that reason, while the Court cited, and expressly approved, the four rules laid down in *Mebane* v. *Layton*, 89 N. C., 396, one of which was that a sale to satisfy an old debt could be lawfully made without laying off the homestead of the debtor.     So in *Miller* v. *Miller*, 89 N. C., 402, there is an intimation (which is entirely *obiter*) of the view subsequently taken by a majority of the Court in *Morrison* v. *Watson*, 101 N. C., 332, but the sale of the land to satisfy an old debt, without allotting a homestead, was held valid.

So that, apart from some unnecessary intimations, there was an unbroken line of authorities adhering to the doctrine enunciated in *Earle* v. *Hardie* down to *McCanless* v. *Flinchum*, 98 N. C., 358, where a majority of the Court declared, and the subsequent case of *Morrison* v. *Watson*, 101 N. C., 332, in which a majority of the Court held that it was essential to the validity of the sale of land under execution issuing on a debt originating before the adoption of the provision contained in Article X of the Constitution, that a homestead be allotted to the execution debtor, unless it clearly appeared that, at the time of the sale, the debtor did not own lands subject to execution of the value of one thousand dollars.     In that case, too, the Court say : " The charge given is obnoxious to no just complaint of the plaintiff, for it requires him to show that the lands were worth less than one thousand dollars, the maximum allowed for homestead, increased by the debt, interest and cost."

The same creditor who, prior to the year 1867, could cause to be sold under execution, free from vexatious delay, the whole of his debtor's land, without regard to its value, dare not now sell without incurring the costs of allotment of

homestead, unless he is not only assured himself, but is confident that he will be able to satisfy any jury called upon to try the issue of title for an indefinite period in the future, that the land was not worth, at the time of sale, more than the sum of one thousand dollars, with the Court costs and that of allotment added. The burden is cast upon him to show that the value was less, or have the sale declared void. Consequently, though the judgment debt may amount to many thousands of dollars, if the creditor finds that the estimates of different persons as to the value of the debtor's land vary from eight hundred to two thousand dollars, he cannot afford to buy himself, nor can he induce others to purchase the land at execution sale until it is valued by appraisers at his expense. If, by selling the excess, if any, and then the allotment, the sum realized is still insufficient to pay the whole debt, the creditor has been compelled to make a disbursement that he will now lose, and to which, under the old law, he would not have been subjected. For the purpose of adjusting the rights of creditor and debtor under the old law, the criterion of the value of land was the amount it would bring at a fair and open sale at public auction by virtue of the execution, and unless such sale could be successfully impeached for fraud, as in preventing a fair competition of bidders, the purchaser got a good title without regard to the amount of his bid. If an attempt had been made to set aside such sale on the ground that competition of bidders was suppressed, the presumption of law would have been in favor of its validity, and the party alleging fraud would have been required to prove it to the satisfaction of a jury. But, under the doctrine laid down in *Morrison* v. *Watson, supra,* the purchaser at a sale made without laying off the homestead, because the creditor believed the land worth less than one thousand dollars and costs, buys with the burden (without regard to the price for which the land actually sells) of satisfying a jury, even in

the distant future, that it is not worth one thousand dollars and costs. Common observation has taught us that the estimates of juries as to value in such cases are as widely variant as the opinions of witnesses on the same subject, and yet, if the estimate of value exceeds one thousand dollars and costs by even one dollar, the deed of a purchaser at such sale must be declared void.

It cannot be successfully contended that the testator of Cowan would not have been placed in such a dilemma as would have greatly embarrassed him in pursuing his remedy and probably have decreased the value of his judgment, had not the defendant Walker been unwilling to risk the validity of a sale for the principal and interest of the debt. The plaintiff who bought at the sale for costs occupies the same position as if the land had been sold for the debt as well as costs, and the officers of the Court were not bound to advance the money necessary to lay off the homestead and incur the risk of reimbursement. The bill of costs must have been very small if it did not exceed the plaintiff's bid of ten dollars. It is the folly of the debtor if, by reason of the uncertainty as to the validity of the sale, the land brought less than its value. He ought to have paid the costs when he paid the debt. The fact that the Court so construes *The Code* as to impose upon the creditor or other purchaser, as the case may be, a new burden that would not have attached to a sale under the former law, or to require him to make, at his peril, inquiries and acquire information as to values, clogs the sale with conditions, and is manifestly calculated to diminish the value of the debt and interfere seriously with its collection.

The question, whether we shall adhere to the rule, for the first time distinctly stated in *Morrison* v *Watson, supra,* at the September Term, 1888, of this Court, or overrule that case and sustain the unbroken current of authority recognized for nearly ten years previous, is one of no little moment

to the people of the State. From the time when the decision in the case of *Earle* v. *Hardie* was published, in January, 1879, it was accepted as the basis of proceedings to collect probably thousands of judgments on old claims, for the satisfaction of which all the land of the debtor had been declared liable in *Edwards* v. *Kearsy*. The idea that there would be stability in these first decisions was strengthened by the legislative construction given by the Act of 1879, ch. 256, ratified March 14th, 1879 (that being the first General Assembly that met after the publication of the opinion in *Edwards* v. *Kearsy*). The preamble of the act declares that, "Whereas, the Supreme Court of the United States, in the case of *Edwards* v. *Kearsy*, decided at the October Term, one thousand eight hundred and seventy-seven, that the personal property exemptions and homesteads provided for by sections one and two, article ten, of the Constitution of North Carolina, were inoperative in respect to debts and obligations contracted prior to the adoption of said Constitution; and whereas, doubts exist whether the various statutes providing for the exemption of property from execution, which were in force at the date of the adoption of said Constitution, have not been repealed," &c.

The act, then, assuming the Constitution and machinery for allotting homesteads to be void as to debts contracted before the Constitution was adopted, provides that debtors, as against such claims, may have set apart to them such homestead as not to exceed one thousand dollars in value, and such personal property, not to exceed five hundred dollars, as they may have been entitled to under any law in force before the adoption of said Constitution, &c. This statute is worthy of grave consideration, both as a contemporaneous legislative construction of the law, and because it was calculated, considered with our decisions mentioned, to induce, and did induce, persons to buy land sold for old debts without allotment of homestead. In fact, upon an examination

of the Act of 1879 and chapter 10 of *The Code*, and comparing them with chapter 137, Acts of 1868–'69 (Battle's Rev., ch. 55), it will be found that there has been no statute in force since the passage of the Act of 1879, requiring, or authorizing, a Sheriff or other officer to lay off and set apart a homestead before levying upon the real estate of the execution debtor, where the execution is for the collection of a debt contracted prior to April 24, 1868; for chapter 10 of *The Code*, which is substantially a re-enactment of chapter 256 of the Acts of 1879, and so much of chapter 137 of the Acts of 1868–'69 as provides the machinery for carrying it into effect, among other things provides (sec. 501, sub-sec. 3), "that property, real and personal, as set forth in Art. X of the Constitution of the State," shall be exempt from sale under execution "upon debts contracted and causes of action accrued since April 24, 1868," and while § 502 of *The Code* purports to be a re-enactment of § 2, ch. 137 of the Acts of 1868–'69, it, in fact, so alters and amends that section, as will be seen by comparing them, as to make it conform to the Act of 1879 by providing that the Sheriff, or other officer, charged with the levy of execution, shall summons appraisers, &c., " before levying upon the real estate of any resident of this State who is entitled to a homestead under this chapter," &c.; and " this chapter" (*The Code*, ch. 10) only entitles the execution debtor to the homestead exemption "upon debts contracted or causes of action accrued since April 24, 1868." The words, "entitled to a homestead under this chapter," are not in § 2, ch. 137 of the Acts of 1868–'69, and they limit the Sheriff's duty in laying off the homestead before levy to executions "upon debts contracted, or causes of action accrued since April 24, 1868," as provided "under this chapter" (*The Code*, ch. 10, § 501, sub-sec. 3); thus amending the provisions of the Act of 1868–'69 (which this Court, following the decision in *Edwards* v. *Kearsy*, had declared

unconstitutional) so as make the machinery for laying off the homestead conform to the Act of 1879 and the ruling in *Edwards* v. *Kearsy.*

This is not the ordinary case in which the doctrine of *stare decisis* can be invoked as furnishing a sufficient reason for sustaining the last adjudications of the Court. The general policy of adhering to the declared opinions of the Court is subject to the limitation that inadvertent decisions should be overruled, unless they have been acted on for a long time and property has been bought by reason of the public faith in the stability of the principle decided in them. The legislative and judicial constructions of the Constitution, made first in the year 1879, led to sales under the advice of counsel at every court-house in the State in disregard of the Act of 1869, and the lands bought, had, under the confidence, strengthened by repeated subsequent adjudications, been transmitted by descent and conveyed by deeds with covenants of warranty, until now it is probable that many thousands of people will be seriously damaged if a Sheriff's deed, constituting an essential link in their claims of title, is to be held void because this Court has modified its explicit construction of the homestead laws, in conformity with which the sale was made by the Sheriff. It will make no difference to the numberless intermediate purchasers, who paid full value on the advice of counsel predicated upon the opinion of this Court, whether the land originally sold under execution for ten or for ten thousand dollars. Neither the question whether we will adhere to the settled interpretation of the Federal Constitution, nor whether we should protect those who invested money or incurred pecuniary liability, under the reasonable belief that the Homestead Machinery Act of 1869 had been declared null and void, can be dwarfed or magnified in importance as principles in the ratio of increase or decrease in the amount of the bid at public vendue.

In holding, as we do, that the sale is valid and the plaintiff's title to the "Luck Place" good, he having disclaimed as to the other tract, we restore vitality to numerous titles for which persons have been induced to expend their money by the plain declaration of this Court that the Machinery Act of 1869, "so far as it provides for laying off and allotting homesteads against debts contracted prior to the 24th of April, 1868, the date of the adoption of the Constitution, is void." *Gheen* v. *Summey, supra.*

On the other hand, the rule was laid down in *Wyche* v. *Wyche*, 85 N. C., 96, that a purchaser at a sale of land, made by a Sheriff in 1869 under execution, to satisfy an old debt, subject to the homestead, took the land with the incumbrance, and the whole tract having been allotted to the debtor, that only the reversionary interest passed to him. In the cases of *Corpening* v. *Kincaid*, 82 N. C., 202, and *Lowdermilk* v. *Corpening*, 92 N. C., 333, it was settled that the creditor, in selling to satisfy an old debt, might recognize the homestead (in that case allotted) for the benefit of the "homesteader," and sell the reversionary interest before the passage of the Act of 1870, forbidding a separate sale of said interest. This principle is in no way dependent on the *obiter* intimation given in the latter case of the subsequent holding in *Morrison* v. *Watson.*

It will be conceded that the act forbidding the sale of the reversionary interests is as certainly invalid and unconstitutional as the provision of the organic law exempting the homestead as a prohibition against proceedings to collect debts created before April 24, 1868. But, while the creditor may sell the entire interest of the debtor, passing to the purchaser the fee-simple and driving the debtor from his home, it is clear that, under the rule and reasoning in *Wyche* v. *Wyche, Barrett* v. *Richardson* and *Lowdermilk* v. *Corpening, supra,* if he permit the Sheriff, as his agent, in mercy to the debtor, to sell, "subject to the homestead" (allotted or unallotted),

the sale is valid and passes the reversionary interest only. In *Barrett* v. *Richardson,* 76 N. C., 423, Justice READE, for the Court, says: "The defendants claim the land, discharged of the homestead, upon the ground that the debts for which the land was sold were contracted prior to the adoption of the Constitution, and that, therefore, the plaintiff had no right to claim a homestead as against those debts. Grant that for the sake of argument, and grant that the plaintiffs in these executions might have had the lands levied on and sold, yet they were not obliged to do it, and did not do it. On the contrary, the levy, sale and Sheriff's deed were 'subject to the homestead.'" If, therefore, the proceedings to collect old debts have been conformed within two years past to the opinion of the Court in *Morrison* v. *Watson,* it is manifest that not a single title, derived from sales so made, will be rendered invalid by reason of the fact that the decision in that case is now overruled only in so far as it declares a previous allotment of a homestead in any case essential to the validity of a sale made to satisfy a debt contracted before April 24th, 1868. Whether the creditor has caused the debtor's land to be sold "subject to the homestead," or has sold the excess only, after allotting the homestead, or where the excess failed to bring a sum sufficient to satisfy the debt, has proceeded further to sell successively fractional parts of the homestead itself, in order to favor the debtor, the purchaser, in any and all of these cases, has taken a title not defeasible because of any irregularity in the manner of selling.

Where the adjudications of a Court, in construing a statute or the organic law, seem to have been wrong originally, but have been recognized as authority for years, and titles to property have been accepted through faith in their stability, such judicial declarations become a rule of property. Lord Mansfield said: "When solemn determinations, acquiesced under, have settled precise cases and become a rule of prop-

erty, they ought, for the sake of certainty, to be observed as if they had originally formed a part of the text of the statute." *Wyndham* v. *Chetwynd*, 1 Burrow, 419; *State* v. *Thompson*, 10 La. Ann. Rep., 122; Sedgwick on Statutory and Constitutional Law, 254; *Scott* v. *Kenan*, 94 N. C., 296; *Grantham* v. *Kennedy*, 91 N. C., 148; *Young* v. *Jackson*, 92 N. C., 144; *Gilpelke* v. *Dubuque*, 1 Wall., 175.

There is error. The Court should, upon the findings of the jury and the admissions, have allowed plaintiff's motion for judgment in his favor for the possession of the land known as the "Luck Place," and for costs. The judgment of the Court below is reversed, and judgment must be entered in favor of the plaintiff for a writ of possession for said "Luck Place," and rents of that place, and for costs.

Error.

MERRIMON, C. J., dissenting: I feel constrained to differ very widely from my brethren in this case. I dissent from the judgment of the Court, much of the reasoning of the opinion, the interpretation given therein to numerous decided cases, and the overruling of several other cases, decided after much and earnest consideration.

It seems to me very clear that this case, like that of *Hughes* v. *Hodges*, 102 N. C., 236, and going beyond it in important respects, further narrows, impairs and unsettles the right of homestead, as established and contemplated by the Constitution, while it unnecessarily renews and enlarges the conflict of decision on a subject—that of homestead— that has given the Court not a little trouble in the past, and will likely continue to do so. Moreover, it manifests an inconsiderate disregard of decided cases that cannot fail to result in more or less detriment to the public, and lessen confidence in the uniformity and stability of the decisions of this Court, something very serious in its nature and greatly to be deprecated.

The decision must result in grievous injustice to the defendant. Under the decisions of this Court, prevailing in pertinent and material respects at the time the sale and deed under which the plaintiff's claims were made, they were absolutely void. This case overrules those cases and makes such sale and deed valid, and, as a consequence, the defendant loses his tract of land, which the jury found to be worth several hundred dollars, and the plaintiff gets it for the nominal price of ten dollars! I think the cases so overruled were correctly decided, but even if their correctness were questionable they should not be overruled. If they were in conflict, to some extent, as contended, with former decisions, the later ones should prevail and be observed. Otherwise, there can be no end to such conflict, and the result must be deplorable.

I will state some of the grounds of my dissent more in detail. The plaintiff contends earnestly, that inasmuch as the debt, to satisfy which the defendant's land was sold, was contracted before the present Constitution of this State took effect, the laws of the State in respect to the right of homestead and the homestead, do not apply; that, as to this debt, they are inoperative and void, because, as he insists, they impair the obligation of the contract, and are thus in conflict with the Constitution of the United States, and he cites and relies mainly upon *Edwards* v. *Kearsy*, 96 U. S. Rep , 595, which case went from this Court.

It must be observed that the Supreme Court of the United States did not, in terms or effect, decide in the case just cited that the judgment debtor was not entitled in any case to have his homestead valued and laid off to him as allowed by the Constitution and laws of this State, if the debt on which the judgment was founded was contracted before the present State Constitution took effect. It simply decided, in substance and effect, and no more, that the homestead thus valued and laid off could not " be exempt from sale under

execution or other final process obtained on any" such debt, if it were *necessary* to the satisfaction of the debt, because to allow it to be so exempt would impair the obligation of the contract. Obviously, the Court did not decide, nor intend to decide, that in such a case the debtor could not have his homestead, if he had property, real or personal, subject to levy and sale sufficient to satisfy the debt without resorting to his homestead. Thus, if the debt were five hundred dollars, and the debtor had land of the value of two or five thousand dollars subject to the satisfaction of the debt, other than the homestead, the Court did not decide that the latter would not in such case be exempt from such sale; nor did it decide that in such case the proceedings, whereby the homestead was valued and laid off, were void necessarily. If there were property sufficient to satisfy the debt without resorting to the homestead the latter would be exempt, because in that case the obligation of the contract would not be impaired, and the laws of the State in respect to homestead would not be in conflict with the Constitution of the United States. The Constitution of the United States and the Constitution of this State, and the laws of the latter, are not unnecessarily to be interpreted and treated as in conflict. On the contrary, the constitutional provisions and statutory regulations of the State on any subject will be allowed to operate and have just effect, unless they in some way materially interfere with, abridge or impair the powers, authority and guarantees established and secured by the Constitution of the United States. *Packet Co.* v. *Keokuk*, 95 U. S. Rep., 80; *Allen* v. *Louisiana*, 103 U. S. Rep., 80; *Austin* v. *Alderman*, 7 Wallace, 694. The Constitution and laws of the United States, and the same of the several States, are not presumed to be at all in conflict; on the contrary, they are presumed to be in harmony, and, in material respects, are to be interpreted and treated as harmonizing as far as reasonably and justly they may be. Nor will the Courts of the

United States unnecessarily ignore and treat as inoperative and void constitutional provisions and statutes of the several States. On the contrary, it is their duty to give, and they will give, them effect when and where they can properly do so. *Clark* v. *Smith*, 13 Pet., 195 ; *Claflin* v. *Hoaseman*, 93 U. S., 130. Hence, the Court, in the case already cited, said cautiously: " It is to be understood that the encroachment thus denounced must be *material*. If it be not *material*, it will be regarded as of no account." The Court said further: " The remedy subsisting in a State when and where a contract is made and is to be performed, is a part of its obligation, and any subsequent law of the State which so affects the remedy as *substantially* to impair and lessen the value of the contract is forbidden by the Constitution, and is therefore void."

The suggestion that this Court has made decisions since *Edwards* v. *Kearsy, supra*, was decided, not in harmony with it, is certainly unfounded. On the contrary, it has, uniformly, in many cases, expressly recognized that case, and substantially, in all material respects, applied the law as expounded and settled by it, as the cases presently to be cited, and other cases, abundantly show. Giving effect to the constitutional provisions and statutory regulations in respect to homestead, the Court has decided in numerous cases that debts contracted before the present constitutional provision establishing the right of homestead took effect, do not *necessarily* prevail against the homestead—that they do not unless it is necessary to their satisfaction to sell it; and it has also so interpreted the statutory regulations in respect to the valuation and laying off the homestead as to give them practical effect. The Court has, as we shall see, made no decision that impairs the right of such creditor, or that materially delays or cripples the enforcement of that right. It has only administered the right of homestead of such

debtor as far as this might be done consistently with the paramount right of such creditor.

In *Albright* v. *Albright*, 88 N. C., 238, the late Justice RUFFIN said : "The plaintiff has a clear constitutional right to his exemptions in both his realty and personalty, and this right he has against each and every one of his creditors without regard to the date of his demand. It is a mistake to suppose that the law giving such exemptions is necessarily void as against debts existing prior to its adoption. It is only so in case there should not be a sufficiency, after allowing the exemptions, fully to satisfy them, whereby they would be defeated. Otherwise they are operative and constitutional as to them as against any other demand whatever; that is to say, the debtor has a *right to have his allotment made,* setting apart specifically his homestead and his exemptions, and then to have the creditor, though his claim be an old one, to exhaust all his other possessions of every kind before he shall put his hands on them. *Cheatham* v. *Jones,* 68 N. C., 153; *Burton* v. *Spiers,* 87 N. C., 87." This the present case expressly overrules.

In *Miller* v. *Miller,* 89 N. C., 402, the Court said: "But where the homestead does not prevail, the debtor takes what is left after the debt is paid. If nothing is left, the laying off the homestead would have nothing to operate upon and it would be useless. It would be otherwise, however, if the debtor had property sufficient to pay the judgments whose liens ante-date the last mentioned judgment, for the law favors the homestead; and if the debt, that may, *if need be, prevail against it,* can be paid without selling it, this must be done. The classes of debts that prevail against the homestead do not so prevail *necessarily and at all events,* but they do so only when to sell it is necessary to pay them. If the personal property over the exemption and the real property of the debtor will more than pay the judgment that prevails against the homestead, then and in that case the homestead should

be laid off so that the excess may first be sold, and the Sheriff will be in peril if he fails to have this done. * * * It may happen that the debtor will get a homestead of less value than one thousand dollars." The substance and pertinent part of what is thus said is also overruled by the present case.

In *Lowdermilk* v. *Corpening*, 92 N. C., 333, the late Chief Justice SMITH said: "Indeed, the homestead exemption is not void as to either class of debts, and it only becomes so as to such as were contracted before it became a law, when otherwise the latter could not be collected out of other property of the debtor. Such other property ought first to be appropriated, and, if sufficient, the debtor allowed to avail himself of the benefit of the constitutional provision made in his behalf." *Cobb* v. *Hallyburton, id.*, 652; *Morrison* v. *Watson,* 101 N. C., 336; *Wilson* v. *Patton,* 87 N. C., 318; *Butler* v. *Stainback, id.*, 216, are to the same effect, and there are other like cases. These cases are all overruled in the respect now under consideration.

The appellant lays much 'stress on what is said in *Gheen* v. *Summey,* 80 N. C., 187; *Grant* v. *Edwards,* 86 N. C., 515, and *Keener* v. *Goodson,* 89 N. C., 273. But these cases, in their substance, properly understood and interpreted, do not contravene what is said and decided in the cases just cited, *supra,* and quoted from. They decide, generally and properly, that debts contracted anterior to the Constitution prevail against the homestead; and it is further said in them, in general terms, that it is not necessary to value and lay the same off. But the question now under consideration was not raised or adverted to at all in them, as it was in numerous cases afterwards. The Court did not then, or at any time afterwards, so understand. The Judge who wrote the opinion of the Court in those cases, and the same Judges who decided them, made most of the subsequent decisions cited, *supra,* and, in doing so, so far as appears, never sup-

posed for a moment that they were overruling them, as, really, they were not. Indeed, in deciding the subsequent cases referred to, they were, as to the subject now under consideration, simply passing upon new aspects of the subject of homestead as they were from time to time presented. So that, *Gheen* v. *Summey* and *Grant* v. *Edwards, supra,* and perhaps other cases more or less like them, prove nothing to the present purpose.

It thus appears from a multitude of decisions of this Court that the debtor, in a proper case, may have the homestead valued and laid off to him, although the debt be one that may, if need be, prevail against it, and there is not a single decision, properly understood, to the contrary.

The Constitution (Art. X, §§ 2, 8) gives and secures the right of homestead, and the statute (*The Code,* §§ 502, 524) prescribes how the homestead shall be valued and laid off to the owner thereof. The purpose thus expressed is a lawful one, and the constitutional provisions and statutory regulations cited are, in their general application, valid, although, in some particular respects, they may not be. They are not, on this latter account, void, and hence must prevail and have effect as far and in as full measure as practicable. A statute wholly void cannot operate at all, but when its purpose is lawful, and it may operate in some of its material parts and in material respects, it must be allowed to have effect and be enforced to such extent as it has validity.

Now, as we have seen, one otherwise entitled may have his homestead, although he owes a debt that may, *if need be,* prevail against and take it for satisfaction thereof. Why shall the homestead in that case not be valued and laid off to the debtor in as full measure as practicable? No substantial reason has been given why it should not be. The statute does not provide, by exception or otherwise, that it shall not be. On the contrary, it, in effect, provides affirma-

tively that it shall be. The constitutional provision and the statute, intending to give the homestead, encounter the objection that the owner thereof owes a debt that, if need be, prevails against it; then, and in that case, the purpose of them is to give it as far and as fully as practicable. In view of the generous and wholesome purpose of the Constitution, such interpretation is just and reasonable and necessary, and there is neither statute nor decision to the contrary. The contention of the plaintiff is, that in such a case the land of the debtor must be sold, without valuing and laying off the homestead, although the debtor might have land enough in addition to and other than the homestead to pay the debt twice over! It is said that in such case the law of homestead does not apply at all, and, therefore, all proceedings in that respect are nugatory and void! Such a view surely ought not to be allowed to prevail. In such a case, the debtor ought not to be put to the inconvenience, and perhaps great sacrifice, of having his whole tract sold. It would be wholly unnecessary, and the law, properly applied, does not allow it to be done; it intends that the homestead shall be valued and laid off and the remainder sold.

It is contended further, that the statute (*The Code*, § 501, paragraphs 1, 2, 3, 4, which classify debts and provide certain exemptions as to them,) suggests and implies that the debtor is not entitled to have his homestead valued and laid off to him as to debts contracted anterior to the present Constitution. This contention is founded in serious misapprehension. The statute just cited re-enacts and brings forward in *The Code* certain statutory exemptions from sale under execution that prevailed before the present Constitution took effect, the purpose being to secure them to the debtor, if for any reason he could not have the benefit of the exemptions given and secured by the present Constitution. This appears from the statute itself, and more particularly from the preamble to the statute (Acts 1879, ch. 256).

The statute (*The Code*, §§ 502–524), prescribing how the homestead shall be valued and laid off, is as broad and comprehensive in its terms and effect as it can be; properly interpreted, there is no exceptive provision in it, by implication or otherwise, as to any debt or class of debts; it allows and in legal effect requires, that the homestead shall be valued and laid off in every case where it may be done.

But, if the contention of the plaintiff as to the statutory exemptions referred to were more plausible than it is, it could not be allowed to prevail: because the exemption of the homestead, and the right to have the same in whole or in part, in as large or as small measure as may be allowed, exists and has effect, not by virtue of the statute, but perforce of the Constitution. It gives, secures and exempts the homestead, as far as may be, within the limit it prescribes. It is supreme and controlling, and it is the duty of the Courts to be prompt and diligent in giving it effect in as large measure as may be done. The spirit and purpose of the Constitution so require, and the decisions of this Court have generally harmonized with such spirit and purpose.

It is further insisted that the statute does not provide for valuing and laying off the homestead in such a case. And, in two or three particulars, it does not, in terms. But the purpose of the Constitution and the statute is clear, and the latter must be so interpreted as to effectuate that purpose, if this be at all practicable. This the Court endeavored to do in *McCanless* v. *Flinchum*, 98 N. C., 358, and that case, in this respect, was afterwards expressly approved in *Morrison* v. *Watson*, 101 N. C., 332, although Mr. Justice DAVIS dissented in both cases.

It is also insisted that the method of valuing and laying off the homestead, in such case, impairs the obligation of the contract. This objection has no substantial force. Clearly the Legislature may change methods of procedure as it may deem proper, if it does not *materially* change the

existing methods adversely to the creditor, without impairing such obligation. It has been so uniformly decided by the Supreme Court of the United States, as well as by this Court and other State Courts, in many cases. Here, the creditor is not delayed at all. If need be, he takes the whole homestead to pay his debt and costs, and he is at once, upon the sale of the land, reimbursed the money—costs—he is required to advance. The costs are trifling in amount and could not reasonably be regarded as materially affecting the substance of the remedy of the creditor; they are simply not an unreasonable incident of the change of procedure. *Louisiana* v. *New Orleans,* 102 U. S. Rep., 203.

It has been decided in numerous cases that a sale of land by the Sheriff in cases where, under the law, he is required to have the homestead valued and laid off to the judgment debtor, and he fails to do so, is generally void and the deed of the Sheriff passes no title. There could scarcely be a more striking illustration of the propriety and importance of the rule thus settled until now, than the present case. The plaintiff undertook to purchase land, which the jury found to be of the value of nineteen hundred dollars, for twenty dollars! He took the Sheriff's deed and now insists upon his purchase!

I need not here re-state the reasons that led the Court to make such decisions. It is sufficient to cite several cases in which they may be readily found. They are cogent, founded upon principles of justice, sound public policy and strong statutory provisions. *Mebane* v. *Layton,* 89 N. C., 396; *Arnold* v. *Estis,* 92 N. C., 162; *McCanless* v. *Flinchum,* 98 N. C., 358; *McCracken* v. *Adler,* 98 N. C., 400; *Morrison* v. *Watson,* 101 N. C., 332.

The plaintiff contends that the land was sold as two distinct tracts, and he is entitled to that one on which the defendant does not live, claiming benefit of the exception pointed out in *McCracken* v. *Adler, supra,* as to land "sepa-

rate and distinct from the homestead property, and not necessary to make the homestead complete, as allowed by the statute." Surely this case cannot be treated as coming within that exception. The jury found the fact that the two tracts adjoined each other, and the defendant cultivated and used them as one farm. The two tracts were not separate and distinct in the sense of the exception; hence the price—ten dollars—bid for each! Obviously, the plaintiff regarded the sale as an adventure, and others regarded it as a mockery of a serious proceeding. It turns out to be serious indeed to the debtor defendant.

The defendant did not relieve himself of the incidents of the debt by paying the principal and interest of the judgment. The remedy and the Court costs incident thereto were of the debt, the contract contemplated and embraced them, and they partook of its nature. Hence, the judgment for the costs was on the same footing as the judgment for the principal and interest of the debt. The plaintiff has the same remedy against the defendant's land for costs that he had for the principal debt.

It was, according to the cases pertinent cited, the duty of the Sheriff to have the defendant's homestead valued and laid off as the law prescribes. As he failed to do so, the sale of the land and the deed relied upon by the plaintiff were void. The Court, however, have now decided otherwise— that, as to debts contracted anterior to the present Constitution, the debtor is not entitled to have his homestead valued and laid off to him, and that a sale of the land under execution as to such debt is valid, without regard to the homestead. I do not think so.

It is difficult to determine the compass of the decision in this case. How does it affect sales of land as to debts contracted after the Constitution became operative? Are they valid where the homestead was not valued and laid off to

the debtor before the sale? If so, would the bidders at such sale bid a fair price for the land, not knowing where the homestead might afterwards be laid off, and how much it might embrace? These are important questions.