MARY E. HINNANT et al v. ISHMAEL WILDER.

(Decided March 1, 1898.)

*Action to Recover Land—Partition—Costs—Charge Upon Land—Sale for Non-Payment—Homestead.*

1. The costs in proceedings for partition (including the expenses of the partition) are charges upon the several shares in proportion to their respective values.

2. In an *ex parte* proceeding for the partition of lands, partition was duly made and one part was assigned in severalty to A. The decree ordered the costs to be paid by the partitioners in equal proportions. A failed to pay the amount adjudged against him and the share allotted to her was sold on execution issued on the judgment. No homestead was allotted to A, who had no other land, and her interest was not worth $1,000. *Held*, in an action by the heirs of A against the purchaser at the execution sale, that the sale was valid.

CIVIL ACTION for the recovery of land, tried before *Timberlake, J.*, at Fall Term, 1896, of WILSON Superior Court, upon a case agreed as follows:

1st. Lovett Atkinson and wife, Rhoda Atkinson, died

intestate in the County of Wilson prior to the year 1872, seized and possessed of one tract of land in the county of Wilson, Spring Hill township, adjoining the lands of James H. Renfrow, Rufus Renfrow and others, containing six hundred acres, more or less.

2d. That said lands descended from said Atkinson and wife to Patience Horne, wife of G. H. Horne, and Mary Barnes, wife of Simon Barnes, and Mouring Teasley, wife of W. A. Teasley.

3d. That the said tenants in common filed an *ex parte* petition in the said county of Wilson during the month of January, 1874, asking for a partition of said lands.

4th. That commissioners were duly appointed and a partition was made, the report thereof duly made and confirmed, and the lands described in paragraph 3 of the complaint was allotted to Patience Horne, wife of G. H. Horne.

5th. That the costs of said proceeding and partition was adjudged to be paid by the said petitioners in equal parts; that the petitioner, Patience Horne, failed to pay the amount, to-wit, the sum of $10.50, adjudged against her, and an execution was duly issued, and the share allotted to her was sold by the sheriff of Wilson county on May 4th, 1874, and purchased by W. A. Teasley, who thereafter conveyed the same to Ishmael Wilder.

6th. That no homestead was alotted by the sheriff of Wilson county to the said Patience Horne under said execution; that she owned no other land than the land allotted to her in the division; that the same was not worth as much as one thousand dollars.

7th. That the said Patience Horne died intestate in the county of Wilson on March 26, 1894, leaving the plaintiffs, Mary E. Hinnant and Cora Horne, her heirs-

HINNANT *v.* WILDER.

at-law, her husband, G. H. Horne, surviving her.

8th. That on May 1st, 1896, the said G. H. Horne conveyed all of his interest in the said land to the plaintiffs by deed duly recorded," &c.

Upon the foregoing facts, his Honor gave judgment for the plaintiffs, and defendant appealed.

*Mr. F. A. Woodard* for plaintiff.
*Mr. H. G. Connor* for defendant (appellant).

FAIRCLOTH, C. J.:    In 1874 tenants in common filed an *ex parte* petition for partition, which was duly made and one part was assigned in severalty and confirmed to plaintiffs' ancestor, who is now dead. In the decree of comfirmation it was ordered "that the costs of said proceeding and partition was adjudged to be paid by the said petitioners in equal parts." Plaintiffs' ancestor failed to pay the amount $10.50 adjudged against her and an execution issued and the share allotted to her was sold by the sheriff and purchased by Teasley, who conveyed the same to the defendant, who is in possession. No homestead was allotted by the sheriff to plaintiff's ancestor, who owned no other land, and this tract was not worth one thousand dollars. Are the plaintiffs the owners and entitled to recover?

The question is a new one in our State, and the counsel of neither party was able to furnish any authority in this or any other State. We must therefore proceed on the "reason of the thing," and such analogies as we have. *The Code,* 1902, provides in partition that the compensation of the commissioners, allowances to parties, the expenses incurred for surveying, and all fees and costs of the proceeding shall be paid as the Court may direct. The rule governing costs on actions on

contract or other evidence of debt, in which one party recovers cost against another, has no application here.

In partition proceedings the Court does not proceed *in personam* but *in rem*; in fact, it cannot proceed at all if the title or litigated rights are in dispute until those questions are judicially determined. The property is the debtor to the extent of any charge put upon it. Originally no cost was allowed in partition, but that rule yielded to the common sense of the country, and the rule was adopted of taxing the cost "equally" without regard to the interest or estate of the parties. This rule was shaken by the Court in *Hyde* v. *Hindly*, 2 Cox cases, 408, and the result was statutory regulations, such as we have in our Code and Acts, 1887, Chapters 214 and 284. The general rule now is to apportion the costs according to the value of the interest of the respective parties.

It may be noted that equity jurisdiction is not purely litigious, as at common law, but is often protective and administrative, and in those instances the costs of the cause may be different. Under the protective and administrative branch, it would seem to be a wholesome principle that the party needing and asking for aid should be liable for the costs necessarily incurred in granting his request.

A tenant in common cannot convey his estate by metes and bounds, nor have his homestead allotted, until his property has been assigned in severalty, and this he prays the Court to do. The partition decree conveys no estate, but only serves to indicate where it is, and to relieve it from the status of a community of interest. And the same may be said of the homesteader's rights.

When partition is effected by sale, the money comes

into the hand of the Court and remains as real estate until further orders. The Court does not then hesitate to pay the costs and other charges out of the fund in hand and distribute the residue. It will order the payment out of any other fund of the same party under its control, because it is only the milder method of compelling obedience to its orders. *Clerk's Office* v. *Allen*, 52 N. C., 156; *Clerk's Office* v. *Bank, etc.*, 66 N. C., 214.

The charge of money upon the better share for equality of partition is legal and follows the land wherever it may go without regard to actual notice. The money charged is realty, not because it is essentially so but because the law cannot tolerate the injustice of taking the property of one person and giving it to another without compensation or a sufficient *security* for it, and we perceive no good reason why the same principle should not be applied to secure compensation for the services of the court officers and other expense performed under the direction of the Court. It is no answer to say that they may recover a judgment in assumpsit against the party for services rendered, for that would apply to either kind of partition and would be worthless in each case, when insolvency shall intervene, as seems to be the case in this instance. The charge is the security.

When the petitioners ask the Court voluntarily to partition their lands, they place the property in the hand and under the control of the Court, as effectually as if it was the proceeds of the partition by sale, and we see no difference in treating the costs alike in each case.

In *Long* v. *Walker*, 105 N. C., 90, the debt was contracted before 1867, and the matter of costs adjudged therein arose after 1868, and the defendant claimed his homestead against the costs, but not against the judg-

ment debt. This Court held that the cost as an incident of the judgment was a lien on the property to the same extent as the principal debt, i. e. the homestead right was subject to the judgment for costs. This case is cited only to show the disposition of the law to execute its own decrees for costs as well as otherwise.

Freeman on Cotenancy and Partition, Section 549, says, in the case of sale for partition, that "the costs of the suit and the various necessary proceeding therein, including the sale, are to be paid, and the residue after making such payment, constitutes the fund to be apportioned."

The only questions raised in *Coles* v. *Coles,* 2 Beasley, 365 (13 N. J. Eq. Rep.) related to costs in partition, and the Court held that "equity follows the practice at law (meaning since the statutes passed) and charges the cost of the proceeding as well as the expenses of the partition upon the several shares in proportion to their respective values. This is the well settled rule of the Court and is in conformity with the practice in New York. The rule is moreover an equitable one."

If the costs are not secured as a charge on each share, then they are simply a personal liability, and if one tenant fails to pay his part, the other tenants, who have paid their proportions, would be liable for the defaulter's portion, and thus inequality is produced, the same injustice done, as in partition in unequal values, without owelty. This would be giving the property of one to another without compensation, which is an injustice the law will not do or permit to be done.

We conclude that the sale was authorized by the judgment on which the execution issued, and that the judgment in the Superior Court was erroneous.

Reversed.